STATE OF CONNECTICUT *v.* EDWARD PALMER
(12785)
(12786)
(12787)

HEALEY, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued October 9, 1987—decision released January 19, 1988

*John R. Williams,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Frank S. Maco,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. By three separate indictments and amended informations, the defendant, Edward Palmer, was charged with the following crimes: three counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A);[1] three counts of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a);[2] three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a);[3] three counts of sexual assault in the first degree with a firearm in violation of General Statutes § 53a-70a (a);[4] two counts of robbery in the first degree

[1] General Statutes § 53a-92 (a) (2) (A) provides: "KIDNAPPING IN THE FIRST DEGREE. (a) A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[2] General Statutes § 53a-95 (a) provides: "UNLAWFUL RESTRAINT IN THE FIRST DEGREE: CLASS D FELONY. (a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose the latter to a substantial risk of physical injury. . . ."

[3] General Statutes § 53a-70 (a) provides: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[4] General Statutes (Rev. to 1979) § 53a-70a (a) provides: "SEXUAL ASSAULT IN THE FIRST DEGREE WITH A FIREARM: CLASS B FELONY; ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree with a firearm when such person commits sexual assault in the first degree as provided in section 53a-70, and in the commission of such offense he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, rifle, shotgun or other firearm. No person shall be convicted of sexual assault

in violation of General Statutes § 53a-134 (a) (4);[5] and one count of assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[6] The defendant pleaded not guilty to all the charges and elected a trial by a jury of twelve. Prior to trial, the trial court granted the defendant's oral motion to consolidate docket numbers 12785,[7] 12786[8] and 12787[9] for purposes of trial.

The defendant was found guilty of three counts of kidnapping in the first degree, three counts of unlawful restraint in the first degree, one count of sexual assault in the first degree, two counts of sexual assault in the first degree with a firearm, two counts of rob-

---

in the first degree and sexual assault in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

[5] General Statutes § 53a-134 (a) (4) provides: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged."

[6] General Statutes § 53a-61 (a) (1) provides: "ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

[7] In Docket No. 12785, the defendant was charged with having committed the following crimes against K, on or about December 16, 1980: (1) kidnapping in the first degree; General Statutes § 53a-92 (a) (2) (A); (2) unlawful restraint in the first degree; General Statutes § 53a-95 (a); (3) sexual assault in the first degree; General Statutes § 53a-70 (a); (4) sexual assault in the first degree with a firearm; General Statutes § 53a-70a (a); and (5) robbery in the first degree. General Statutes § 53a-134 (a) (4).

[8] In Docket No. 12786, the defendant was charged with having committed the same crimes against O, on or about December 11, 1980, as set forth in footnote 7, supra.

[9] In Docket No. 12787, the defendant was also charged with having committed crimes (1) through (4) as set forth in footnote 7, supra, and the additional crime of assault in the third degree; General Statutes § 53a-61 (a) (1); against W, on or about November 25, 1980.

bery in the first degree, and one count of assault in the third degree. The trial court sentenced the defendant on all counts to a total effective sentence of not more than life, plus life, plus fifty-seven years and not less than seventy-seven years with the sentences to run consecutively with any sentence the defendant was then serving.

On appeal, the defendant claims that the trial court erred in: (1) instructing the jury regarding intent in connection with the crime of kidnapping in the first degree; (2) unlawfully imposing consecutive sentences in each case for the lesser included offense of unlawful restraint in the first degree; (3) refusing to strike the testimony of two of the victims whose prior recorded statements given while under hypnosis had been lost by the police and not disclosed during discovery; and (4) admitting the voice identification testimony of two of the victims in violation of the defendant's fifth, sixth and fourteenth amendment rights under the United States constitution. We find no error.

At trial, the jury could reasonably have found the following facts.

## DOCKET NO. 12787

At approximately 9:15 p.m. on November 25, 1980, W was accosted by a man with a gun on McKinley Avenue, in Bridgeport. The assailant covered the victim's eyes with a scarf, forced her into the trunk of a car at gunpoint, and drove off. Shortly thereafter, the victim was transferred to the trunk of a second car and driven to a building. The victim recalled that, at the building and after being taken out of the trunk of the automobile, she heard the loud sounds of traffic, was walked over a grassy area, a curb, then a sidewalk, and carried up some stairs into the building where she was sexually assaulted. After the assault, the assailant engaged the victim in conversation for a short time and

thereafter drove her to the vicinity of Capitol and Madison Avenues where she was let out of the car.

## DOCKET NO. 12786

On December 11, 1980, at approximately 2 a.m., O arrived at her home in Bridgeport from a downtown restaurant and encountered a man with a silver gun. She was abducted, placed on the floor of a station wagon, driven away, and later transferred to the floor of a second car. She recalled that after being taken from the second car, she was walked over a grassy area, a large curb and then carried into a building where she was sexually assaulted. As in the assault of W, the assailant told O to insert his penis into her. After the sexual assault, the assailant lay by the victim's side and engaged her in conversation for a period of time. The assailant then dressed her, took $8 from her purse and drove her to the corner of Madison and Lincoln Avenues where she was let out of the car.

## DOCKET NO. 12785

On December 16, 1980, at approximately 1:30 a.m., K was on her way to a party when, due to icy roads, she decided to go straight home. As she exited the Connecticut turnpike at the Broad Street exit in Stratford, her automobile was bumped from the rear. When she got out of her car she was accosted and then abducted by a man with a silver gun who was wearing a dark mask. The assailant forced the victim into the front seat of her own car, placed tape over her eyes, and drove her car away. When the car stopped, K recalled being walked across a dirt and grassy area, a curb, and then being carried up some stairs into a room. She was also sexually assaulted. As were the other victims, she was instructed to insert her assailant's penis into her. Later, after carrying her back to her car, the assailant engaged the victim in conversation and again displayed a silver gun. K was driven to Lafayette Street in Bridgeport

where the assailant took money from her purse, got out of her car, said goodbye and left on foot.

## I

The first claim of error is that the trial court unconstitutionally instructed the jury to presume the existence of the defendant's intent as it related to the crime of kidnapping in the first degree. The defendant contends that the trial court, in effect, directed a verdict of guilty as to the three counts of kidnapping in the first degree by instructing the jury as follows: "Of course . . . if you find that he actually did inflict some sexual violation or abuse, there could be little question that he intended to." The defendant argues that the instruction constituted a mandatory presumption in violation of the *Sandstrom* doctrine.[10] *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2540, 61 L. Ed. 2d 39 (1979). We disagree.

It is well established that individual jury instructions are not to be judged in artificial isolation, but must be viewed in the context of the overall charge. *Cupp* v. *Naughten,* 441 U.S. 141, 146–47, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *State* v. *Silano,* 204 Conn. 769, 773, 529 A.2d 1283 (1987); *State* v. *Dolphin,* 195 Conn. 444, 451, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). " 'The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict; *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982); *State* v. *Williams,* 182 Conn. 262, 269, 438 A.2d 80 v. *1.5(1980); State* v. *Piskorski,* 177 Conn. 677, 746–47, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); and not critically dissected in a microscopic search for possible error. *State* v. *Harris,* 172 Conn. 223, 226–27, 374 A.2d 203

---

[10] At trial the defendant properly took exception to this portion of the court's charge and argued that a violation of *Sandstrom* had occurred.

(1977).' *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986); *State* v. *Miller,* [202 Conn. 463, 491–92, 522 A.2d 249 (1987)]; *State* v. *Whelan,* [200 Conn. 743, 757, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986)]; *State* v. *Widget,* 11 Conn. App. 47, 52, 525 A.2d 548 (1987)." *State* v. *Silano,* supra.

"In *Sandstrom* v. *Montana,* supra, 517–24, the United States Supreme Court held that a jury instruction that 'the law presumes that a person intends the ordinary consequences of his voluntary acts' violated the defendant's due process rights because a reasonable jury could have interpreted the instruction as a conclusive or burden-shifting presumption and thus relieved the state of its burden of proving every element of the crime. See *Francis* v. *Franklin,* 471 U.S. 307, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985); *United States* v. *United States Gypsum Co.,* 438 U.S. 422, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978); *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). . . . We have, however, recognized that the rule of *Sandstrom* must not be oversimplified. *State* v. *Mason,* 186 Conn. 574, 582–83, 442 A.2d 1335 (1982); *State* v. *Pina,* 186 Conn. 261, 263, 440 A.2d 967 (1982). *Sandstrom* does not invalidate, for example, the use of an 'entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant.' *Ulster County Court* v. *Allen,* 442 U.S. 140, 157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979); see *State* v. *Fernandez,* 198 Conn. 1, 20, 501 A.2d 1195 (1985); *State* v. *Arroyo,* 180 Conn. 171, 175, 429 A.2d 457 (1980). 'A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury

to draw that conclusion.' " *State* v. *Amarillo,* 198 Conn. 285, 300–302, 503 A.2d 146 (1986); see also *State* v. *Shine,* 193 Conn. 632, 644–45, 479 A.2d 218 (1984); *State* v. *Johnson,* 185 Conn. 163, 167–69, 440 A.2d 858, aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983); *State* v. *Vasquez,* 182 Conn. 242, 246–48, 438 A.2d 424 (1980).

Upon review of the charge as a whole, we find that it clearly delineated the state's burden of proof·regarding each and every element of the crime of kidnapping in the first degree, including intent, and that any possible confusion engendered by the challenged portion was overcome by other instructions. The trial court instructed the jury on the afternoon of April 8, 1985, with regard to the general principles that are applicable to all criminal cases. During this portion of its charge, the trial court clearly informed the jury that the state bore the burden of proving each and every element of the crimes charged, and ultimately of proving the defendant's guilt beyond a reasonable doubt, by repeating the phrase "proof beyond a reasonable doubt" approximately twenty times. The trial court also thoroughly instructed the jury regarding the presumption of innocence that attaches to a criminal defendant. It specifically cautioned the jury that the burden was not on the defendant to prove his innocence. Additionally, the trial court clearly delineated the permissive nature of the jury's ability to draw reasonable and logical inferences from circumstantial evidence. Just prior to recessing for the day, the trial court instructed the jury generally with regard to intent.[11] This portion of the charge clearly indicated that an inference regard-

[11] The trial court instructed the jury as follows regarding intent:

"Now, shortly, I will discuss with you the particular crimes charged. You will note that at least one or more of these charges, it will be the obligation of the State to prove that the defendant acted with a particular intent during the commission of the crime. A person acts intentionally—I'll remind you of this again—with respect to conduct or a circumstance described by

ing intent was "permissive" rather than mandatory, and that intent, when it is an element of a crime, must be established by the state by proof beyond a reasonable doubt.

Upon reconvening the next day and prior to charging the jury on the specific elements of the crimes charged, the trial court reminded the jury to recall the general instructions given the previous day and to specifically recall the requirement that the state bore the burden of proof beyond a reasonable doubt as to each and every element that made up the crimes charged. During the trial court's explanation of the elements of the crime of kidnapping in the first degree, it stated, approximately seven times, that intent was an element of the crime. The court then, a second time, specifically reminded the jury of the instructions on intent given the previous day and again made it clear that all of the essential elements of the crime of kidnapping in the first degree had to be proved beyond a reasonable doubt by the state, and if any one element was not so proven then the jury must return a verdict of not guilty.

Statute defining an offense when his conscious objective is to cause such a result or engage such conduct.

"Intent, ordinarily, cannot be proved directly and usually must be established by circumstances. This is because there exists no way of scrutinizing with certainty the state of mind of a human being. But you may infer intent from the surrounding circumstances, what an individual does or fails to do, whether it be physical, verbal or written conduct, they indicate an intent. You may infer but you are not obligated to, for example, that the defendant intended the necessary and natural consequences of his own actions. You may also consider all other facts and circumstances, all of the credible evidence properly before you in this case which may aid in determining the state of mind of the defendant. Ultimately, it will be for you and you alone as members of a sworn jury to decide from the evidence believed by you whether the State has proved in any instance, beyond a reasonable doubt, that the defendant possessed at the time and place of the alleged commission of any crime charged, the reckless intent necessary to establish the commission of such offense.

"The burden of proving the defendant's intent, when that is required to be established as an element, like the proof of every other element, is always upon the State beyond a reasonable doubt."

We first note that the challenged portion of the trial court's instruction does not contain the word "presume" that ordinarily triggers the *Sandstrom* analysis. It must also be noted that this portion of the charge followed the trial court's instructions on intent and its detailed analysis of the elements of kidnapping in the first degree, and was contained within a general summary of those elements.[12] Additionally, we do not read the challenged sentence of the charge as creating a conclusive presumption of intent as the defendant claims. The court left the actual finding of sexual abuse and the ultimate conclusion to be drawn from that finding to the jury. The sentence did nothing more than suggest to the jury a possible conclusion based on common sense if the jury found that actual sexual abuse had occurred. *Sandstrom* only prohibits a conclusive or mandatory presumption. See *State* v. *Amarillo,* supra. We find no error.

---

[12] The challenged portion of the trial court's instruction is contained within the court's summary of the elements of kidnapping in the first degree as follows:

"First, the defendant, Edward Palmer, must have been the perpetrator, the person who acted against the victim. Secondly, the defendant must restrain the victim. The word restrain, in this context, means that the defendant restricts the alleged victim's movements intentionally and unlawfully in such a manner as to interfere substantially with her liberty by moving her from one place to another without her consent or by confining her in one place for any period of time, either where the restriction begins or in another place to which she has been moved without her consent. And thirdly, you must find that the defendant abducted the victim, that is, that the defendant must restrain the victim with the intent to prevent her liberation, either by secreting or holding her in a place where she is not likely to be found or by using or threatening the use of physical force or intimidation. If you find that the defendant restrained, in this case, [W], and used or threatened the use of a gun against her or hit her or held her in a place where she was not likely to be found with the intent to prevent her liberation, any one of those and this element of the crime is proven. And fourth, the defendant must abduct the victim and restrain her with the intent to violate or abuse her sexually. And in this respect, as I have indicated, the words violate or abuse sexually have no technical meaning. You're to attach to them the ordinary, common meaning that you would give to them in

## II

The defendant next claims that the imposition of consecutive sentences in each of the three cases for the crimes of kidnapping in the first degree and unlawful restraint in the first degree violates the double jeopardy clause of the United States constitution because unlawful restraint in the first degree is a lesser included offense of kidnapping in the first degree. Additionally, the defendant argues that the convictions and the imposition of multiple punishments for both offenses violate the separation of powers clause of article second of the Connecticut constitution because the legislature did not intend that consecutive sentences be imposed for both crimes. The trial court, he argues, invaded the legislature's realm when it did so. We disagree.

## A

The double jeopardy clause of the fifth amendment to the United States constitution provides: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." This clause " 'prohibits not only multiple trials for the same offense but also

the ordinary affairs of your life. If you give credit to the testimony of [W] and find that testimony established with regard to sexual abuse beyond a reasonable doubt, then that element would be satisfied.

"It's not necessary that the actual sexual violation or abuse be proved so long as you believe that the defendant intended to inflict the same and restrained [W] with such intent. Of course, as I said, if you find that he actually did inflict some sexual violation or abuse, there could be little question that he intended to. But even if he did not and you believe the facts indicate that he intended to, although he never consummated the act, then the statutory essential is met for conviction.

"If you find all of these elements, every single one of them proven by the State beyond a reasonable doubt, then you would be warranted in returning a verdict of guilty of kidnapping in the first degree. If you find the State has failed to prove any one of those elements, although it may very well have proved all of the other elements beyond a reasonable doubt, then you cannot return a verdict of guilty. Your verdict must be not guilty, under those circumstances."

multiple punishments for the same offense. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *State* v. *Devino,* 195 Conn. 70, 73, 485 A.2d 1302 (1985); *State* v. *Frazier,* 194 Conn. 233, 237–38, 478 A.2d 1013 (1984).' *State* v. *Thompson,* 197 Conn. 67, 72, 495 A.2d 1054 (1985). 'Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met.' " *State* v. *Boucino,* 199 Conn. 207, 222, 506 A.2d 125 (1986); see also *State* v. *Sharpe,* 195 Conn. 651, 654, 491 A.2d 345 (1985); *State* v. *Devino,* supra, 73–74.

There is no dispute here that the charges of kidnapping in the first degree and unlawful restraint in the first degree arose from the same transaction or occurrence in the case of each of the three victims. Thus, the issue becomes whether these crimes are separate or the same offenses for purposes of double jeopardy. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); see also *State* v. *Wright,* 197 Conn. 588, 593, 500 A.2d 547 (1985); *State* v. *Thompson,* supra; *State* v. *Sharpe,* supra, 654–55; *State* v. *Devino,* supra, 74–75; *State* v. *Goldson,* 178 Conn. 422, 425–26, 423 A.2d 114 (1979). "In conducting this inquiry, we look only to relevant statutes, the information, and the bill of particulars, not to the evidence presented at trial." *State* v. *Wright,* supra; see also *State* v. *Truppi,* 182 Conn. 449, 468, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); *State* v. *Goldson,* supra, 426.

In the case of *State* v. *Vass,* 191 Conn. 604, 469 A.2d 767 (1983), this court addressed, inter alia, the issue of whether the crime of unlawful restraint in the first degree under General Statutes § 53a-95 (a) is a lesser included offense of kidnapping in the second degree under General Statutes § 53a-94.[13] In *Vass,* the defendant claimed that the trial court erred in refusing to instruct the jury as requested on the elements of unlawful restraint in the first degree as a lesser included offense of kidnapping in the second degree. Id., 616. In applying the second part of the four part test set forth in *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980), to determine whether it was proper to charge the jury with respect to the alleged lesser included offense, we held: "In the broad terms of the information with which this defendant was charged, it was possible to commit the greater offense of kidnapping without having first committed the lesser of unlawful restraint in the first degree. For that reason, the defendant's requested charge was unwarranted." *State* v. *Vass,* supra, 617-18. In *Vass,* we reasoned: "The gravamen of unlawful restraint in the first degree is restraint of another person 'under circumstances which expose the latter to a substantial risk of injury.' The gravamen of kidnapping is, however, abduction, without regard to risk of injury." Id., 617. We find the *Vass* case controlling.

With the exception of the dates, times and places of the alleged crimes, the wording of the charging instruments as to the victim in each of these cases was identical. The indictments charged the defendant with the crime of kidnapping in the first degree in that the defendant did abduct and restrain each victim with

---

[13] "[General Statutes] Sec. 53a-94. KIDNAPPING IN THE SECOND DEGREE: CLASS B FELONY. (a) A person is guilty of kidnapping in the second degree when he abducts another person.

"(b) Kidnapping in the second degree is a class B felony."

intent to violate or abuse her sexually in violation of General Statutes § 53a-92 (a) (2) (A). The amended informations charged the defendant, inter alia, with the crime of unlawful restraint in the first degree in that he did restrain the victims under circumstances which exposed them to a substantial risk of physical injury, in violation of General Statutes § 53a-95 (a).

For a conviction of the crime of unlawful restraint in the first degree, the state must prove that the defendant restrained each victim under circumstances which exposed her to a substantial risk of physical injury. On the other hand, for a conviction of the crime of kidnapping in the first degree, the state must prove an abduction coupled with a specific intent to violate or sexually abuse the victim. Whether the evidence at trial revealed that the abduction occurred under circumstances also actually likely to expose the victim to a substantial risk of injury was of no moment in determining whether unlawful restraint was a lesser included offense of kidnapping. Our inquiry is limited to the relevant statutes and the charging documents.

Accordingly, we hold that the defendant could have committed the crime of kidnapping in the first degree in each case without having first committed the allegedly lesser included offense of unlawful restraint in the first degree. Thus we find no violation of the double jeopardy clause and, consequently, no error in the trial court's imposition of consecutive sentences for each of these distinct offenses.

B

The defendant also argues that the imposition of multiple sentences in each of the three cases violated the separation of powers clause of article second of the Connecticut constitution.[14] Specifically, the defendant

---

[14] Article second of the Connecticut constitution provides: "The powers of government shall be divided into three distinct departments, and each

argues that the legislature did not intend that multiple convictions and punishments be imposed for these particular crimes. The defendant relies on the fact that both crimes are classified under part VII of chapter 952 of the General Statutes, entitled "Kidnapping and Related Offenses." We are unpersuaded.

The mere fact that two distinct crimes are contained within the same part or under the same chapter or heading of the penal code does not, by itself, preclude simultaneous convictions of each crime and the imposition of consecutive sentences. See *State* v. *Boucino,* supra; *State* v. *Devino,* supra; *State* v. *Vass,* supra. We cannot divine that by the placement of the two statutes the legislature intended to restrict the power of the trial court to impose multiple sentences for distinct crimes. The legislature specifically authorized the imposition of multiple and consecutive sentences under General Statutes § 53a-37,[15] without reference to whether the crimes were located in the same chapter. Accord-

---

of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

[15] "[General Statutes] Sec. 53a-37. MULTIPLE SENTENCES: CONCURRENT OR CONSECUTIVE, MINIMUM TERM. When multiple sentences of imprisonment are imposed on a person at the same time, or when a person who is subject to any undischarged term of imprisonment imposed at a previous time by a court of this state is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other and to the undischarged term or terms in such manner as the court directs at the time of sentence. The court shall state whether the respective maxima and minima shall run concurrently or consecutively with respect to each other, and shall state in conclusion the effective sentence imposed. When a person is sentenced for two or more counts each constituting a separate offense, the court may order that the term of imprisonment for the second and subsequent counts be for a fixed number of years each. The court in such cases shall not set any minimum term of imprisonment except under the first count, and the fixed number of years imposed for the second and subsequent counts shall be added to the maximum term imposed by the court on the first count."

ingly, we hold that the defendant simply has failed to demonstrate a violation of the separation of powers clause of article second of the Connecticut constitution.

## III

Next the defendant claims that the trial court erred in refusing to strike the trial testimony of the victims K and W, whose recorded statements given while under hypnosis were lost while in the possession of the Bridgeport police department. The defendant argues that the degree of the state's culpability in failing to produce or disclose the recorded statements and the resulting prejudice to the defendant "were enormous."

The following facts are relevant to this issue: On November 26, 1980, and December 19, 1980, respectively, W and K gave sworn written statements to the police regarding their abductions and assaults. On December 19, 1980, K was taken to the office of Dr. Gerald Winter, a hypnotist, by Officer Nancy Sirois and Detective Robert Biroscak in the hope that, while under hypnosis, she could recall additional information about her assailant. W was also taken to Winter's office some time later by Biroscak to be placed under hypnosis, but the record is unclear whether this was done for the purpose of seeking information relevant to the police investigation or for therapeutic reasons. Nevertheless, tape recordings of both sessions were made by Winter who turned the cassette tapes over to the Bridgeport police department.

In August, 1981, the defendant filed a "Motion for Production at Trial" and a "Motion for Discovery and Inspection," which, the state conceded, encompassed the disclosure and production of the tapes. The state filed a partial compliance with these motions on March 22, 1983, and then a supplemental compliance on March 21, 1985. Neither disclosure made reference to the tapes or to the fact that the hypnotic sessions had taken place.

It was not until the second day of jury selection that the defendant first became aware of the hypnosis of K and W and the existence of the cassette tapes.

Subsequently, prior to the commencement of trial, the defendant moved to suppress the testimony of K and W on the basis of the state's failure to disclose the taped hypnotic statements. The trial court denied the motions to suppress, but limited the scope of the victims' testimony. After the direct examination of K and W, the defendant moved to strike their testimony on the same ground on which he had moved to suppress. Both motions were denied.

In cases involving the loss of tape recorded statements of a witness, we have repeatedly "employed a balancing test whereby the imposition of sanctions for nondisclosure ' "depends in large measure upon the extent of the Government's culpability for fail[ing] to make disclosable material available to the defense, on the one hand, weighed against the amount of prejudice to the defense which resulted, on the other." ' *State* v. *Shaw,* [185 Conn. 372, 386, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed 2d. 312 (1982)], quoting *United States* v. *Miranda,* 526 F.2d 1319, 1329 (2d Cir. 1975), cert. denied, 429 U.S. 821, 97 S. Ct. 69, 50 L. Ed. 2d 82 (1976); see also *State* v. *Milum,* [197 Conn. 602, 617, 500 A.2d 555 (1985)]; *State* v. *Myers,* [193 Conn. 457, 467, 479 A.2d 199 (1984)]. Since there exists no constitutional right of access to the statements of a witness for the prosecution, the burden of showing prejudice rests with the defendant. *State* v. *Vessichio,* 197 Conn. 644, 662, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986); *State* v. *Milum,* supra, 616." *State* v. *Mullings,* 202 Conn. 1, 7–8, 519 A.2d 58 (1987).

Having made an extensive review of the record, we are unable to find that the trial court erred when it con-

cluded that the tape recorded statements of the two victims "were inadvertently lost through carelessness by the police officials and that the existence of those items may not have been known to the state's attorney until shortly before trial." In both instances the cassette tapes were given by Winter to Biroscak, who, in turn, gave them to Chief Inspector Anthony Fabrizi. The tapes remained on Fabrizi's desk for a substantial period of time, after which Fabrizi recalls giving the tapes to one of his detectives some time in 1983 or 1984 to be placed in the evidence room. The first time that the Bridgeport police department was required to produce the tapes was in late February or early March of 1985 when the state's attorney's office requested them for trial. After the request, Fabrizi, unable to locate the tapes immediately, searched his desk, reviewed the evidence receipt books from December, 1980, to February, 1985, and ordered a complete search of the three evidence repositories used by the police department. The tapes were never found. While this record reveals the total neglect of standard police procedures regarding the handling and preservation of evidence, the defendant has failed to present any concrete proof that the loss of the tapes resulted from anything other than negligence or inadvertence.

Further, the record does not contain evidence that the state's attorney's office knew of the existence of the tapes or purposely concealed them from the defendant. The report of Stratford police officer Sirois revealed that the cassette tape of K's hypnotic session was in the possession of the Bridgeport police department. It is unclear, however, whether the state's attorney's office obtained that report prior to 1985. Both Biroscak and Fabrizi stated that, while they believed the Sirois report was part of their file that normally would have been sent to the state's attorney's office at the beginning of the prosecution, they had no specific recollec-

tion that this was the case. Fabrizi also stated that he did not personally notify the state's attorney of the existence of the tapes or provide him with copies. Even assuming the Sirois report was furnished the state's attorney by the Bridgeport police department, there is no evidence that the state intentionally secreted the tapes from the defendant.

Where, as here, the loss of tapes was the result of negligence, the question then becomes to what extent, if any, the defense was prejudiced by their loss. *State* v. *Myers,* supra, 469; *State* v. *Shaw,* supra.

As a result of the suppression hearing which was held prior to the taking of evidence, the trial court ordered the exclusion of the testimony of the two victims regarding any matter that could not be established or corroborated by prehypnotic statements or evidence. Thus the court excluded testimony as to any information concerning identification K recalled solely as a result of hypnosis. W's recollection of a conversation with her sister that she remembered following the hypnotic session was also excluded. The trial court further allowed the defendant to introduce into evidence the facts that the hypnotic sessions had occurred, that the tapes of those sessions had been in the possession of the Bridgeport police department for a long period of time, and that they were lost and unavailable for trial. Clearly, the state received no benefit from whatever minor improvement in the victims' memories was produced as a result of hypnosis.

Further, the defendant has failed to demonstrate any prejudice arising from his claimed inability to impeach the two victims with alleged inconsistencies possibly contained in their recorded hypnotic statements. The testimony at the suppression hearing revealed only minor additions to K's memory, not inconsistencies, gleaned from her hypnotic session, and virtually noth-

ing different in W's. Both victims testified at trial and were subject to full cross-examination. The defendant utilized the sworn statements of each that were made prior to the hypnotic sessions to attempt to impeach the victims. The police officers who handled the tapes and who were present at the hypnotic sessions testified at trial and were also subject to full cross-examination.

Under the circumstances, we find both that the defendant has failed to demonstrate that he was prejudiced by the loss of the tapes and that the trial court was well within the proper exercise of its broad discretion when it denied the defendant's motions to strike the testimony of K and W. *State* v. *Santangelo,* 205 Conn. 578, 588–89, 534 A.2d 1175 (1987); *State* v. *Mullings,* supra, 10.

## IV

The defendant's final claim is that the trial court erred in admitting the voice identification testimony of K and O on the ground that their identifications of the defendant's voice were obtained in violation of his rights under the fifth, sixth and fourteenth amendments to the United States constitution. Specifically, the defendant contends that the police should not have interrogated him for the purpose of obtaining a voice identification, without having first advised him of his *Miranda* warnings and without having had his counsel present. *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). He argues, therefore, that the voice identification testimony was the fruit of an unlawful interrogation and improperly admitted at trial. See *Wong Sun* v. *United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). We are unpersuaded.

On March 10, 1981, the defendant was arrested after having been apprehended in the act of burglarizing the

old county courthouse on Golden Hill Street in Bridgeport. The ballistics tests of a gun found on the defendant at the time of the burglary matched those of a gun fired at a police decoy involved in an attempt to apprehend the perpetrator of a series of bumper rapes in Bridgeport. The defendant was arraigned on the burglary charge on March 10 and was released the following day after having posted bond. On March 12, 1981, the defendant was again arrested and arraigned on a charge of having, at an earlier date, robbed a University of Bridgeport security guard of, among other things, his pistol.

During the execution of two search warrants of the defendant's home, the police brought the three victims to the house to attempt to determine if they recognized it. Thereafter, each was brought to the police station separately to listen to "a voice."[16] K immediately and positively identified the defendant's voice as that of her assailant. O was unable to make a positive identification of the defendant's voice but she did note a number of similarities between the defendant's voice and her assailant's. K and O testified at trial as to their respective voice identifications.[17]

## A

### *Miranda* WARNINGS

The defendant contends that, at the time he spoke for the purpose of having the victims attempt to identify

---

[16] The record is in conflict as to whether the three victims were asked if they wanted to listen to "a" voice or to "the suspect's" voice. Even if the police here asked the victims to listen to a voice of a suspect for identification purposes, that does not automatically violate due process or render the identification procedures unnecessarily suggestive. See *State* v. *Austin,* 195 Conn. 496, 500, 488 A.2d 1250 (1985); *State* v. *Asherman,* 193 Conn. 695, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985).

[17] Although it has not been raised as an issue in this appeal, the trial court suppressed the voice identification made by W and precluded both counsel from making any references to it during W's testimony at trial.

his voice, he was entitled to have been given *Miranda* warnings. Since he was not, he argues that the identifications are inadmissible. We disagree.

" 'Before one suspected of the commission of a crime is entitled to the warnings constitutionally required by *Miranda*, two conditions are required: the suspect must be in the custody of law enforcement officials . . . and the suspect must be subjected to interrogation.' (Citations omitted.) *State* v. *Vitale,* 197 Conn. 396, 411, 497 A.2d 956 (1985); see *State* v. *Stankowski,* 184 Conn. 121, 136, 439 A.2d 918, cert. denied, 454 U.S. 1042, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981)." *State* v. *Doehrer,* 200 Conn. 642, 646, 513 A.2d 58 (1986); see also *State* v. *Brown,* 199 Conn. 47, 51, 505 A.2d 1225 (1986). There is no dispute here but that the defendant was in custody, albeit on unrelated charges. Thus, the issue was whether the defendant was subjected to "interrogation."

" ' "Interrogation" as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.' *Rhode Island* v. *Innis,* 446 U.S. 291, 300, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). The term encompasses not only express questioning, but also 'any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.' Id., 301; see *State* v. *Graham,* 186 Conn. 437, 443, 441 A.2d 857 (1982)." *State* v. *Doehrer,* supra, 647; see also *State* v. *Vitale,* supra. The record before this court fails to reflect a measure of compulsion beyond that inherent in custody itself, nor does it reflect conduct by the police designed to elicit incriminating responses.

K was asked by Fabrizi if she would listen to a voice. She agreed and accompanied Biroscak to a door in a hallway outside a room. She testified, both at trial and

at the suppression hearing, that she heard three voices in conversation emanating from the room. She characterized the conversation as being "very casual." Fabrizi, who had arranged the procedure, testified that he had instructed two detectives to engage the defendant in strictly casual conversation. One of the detectives involved characterized the conversation as being "very low key" with no discussion of the crimes involved. Biroscak also characterized the conversation as just "simple, normal, general conversation" about the defendant's job and the like. Later, O also was asked by Fabrizi to listen to a voice. She accompanied Fabrizi and Detective Pettitie to a point outside a room, whereupon Fabrizi went inside, engaged the defendant in casual conversation and asked him if he wanted a hamburger or a coffee.

Where, as here, the record indicates what appears to be a general conversation between the police and a defendant in custody, the burden rests initially with the defendant to demonstrate that the general conversation amounted to custodial interrogation. *State* v. *Doehrer*, supra, citing *United States* v. *Charles*, 738 F.2d 686, 695 n.11 (5th Cir. 1984); see *United States* v. *De La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977); see also *State* v. *Vitale*, supra, 409. The defendant has failed to do so. The defendant has failed to demonstrate that any questions asked or statements made by the police were reasonably likely to, or did in fact, elicit an incriminating response. Even compelling a suspect to speak or to give a voice exemplar solely to measure the physical properties of his or her voice is neither testimonial nor communicative in nature, and thus does not implicate an accused's fifth amendment right against self-incrimination. See *United States* v. *Dionisio*, 410 U.S. 1, 5, 7, 93 S. Ct. 764, 35 L. Ed. 2d 67 (1973); *Gilbert* v. *California*, 388 U.S. 263, 267, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967); *United States* v. *Wade*, 388

U.S. 218, 221–23, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967); *United States* v. *Campbell,* 732 F.2d 1017, 1021 (1st Cir. 1984). *Miranda* warnings were therefore not required here.

The trial court did not err in refusing to suppress the voice identification testimony of K and O on fifth amendment grounds.

B

The defendant also argues that, once he had been arrested and arraigned on the charge of robbing the security guard, absent a waiver, any questioning without the presence of an attorney violated his sixth and fourteenth amendment rights to counsel.

As this court has consistently held, a defendant's right to counsel, under the sixth amendment to the United States constitution or its state constitutional counterpart, attaches only " ' " 'at or after the initiation of adversarial judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment.' *Kirby* v. *Illinois,* 406 U.S. 682, 689, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972)." *State* v. *Vitale,* 190 Conn. 219, 232, 460 A.2d 961 (1983).' " *State* v. *Morrill,* 197 Conn. 507, 531–32, 498 A.2d 76 (1985), quoting *State* v. *Falcon,* 196 Conn. 557, 560, 494 A.2d 1190 (1985). At the time of the voice identifications in March, 1981, the defendant was simply a suspect during the investigatory stages of the three sexual assault cases presently before this court. No adversarial judicial criminal proceedings had yet been initiated concerning these charges, and, in fact, the defendant was not arrested on them until July, 1981, months after the voice identifications. The fact that the defendant was in custody for unrelated crimes does not affect the time at which his right to counsel attached on these sexual assault charges. See *State* v. *Morrill,* supra, 532; *State* v. *Biller,* 190 Conn. 594,

615–16, 462 A.2d 987 (1983); *State* v. *Vitale,* supra, 232–33; see also *United States* v. *Grego,* 724 F.2d 701, 702–703 (8th Cir. 1984); *United States* v. *DeWolf,* 696 F.2d 1, 3 (1st Cir. 1982).

We hold, therefore, that the pre-arrest, pre-arraignment, general conversations engaged in by the police and the defendant in connection with the voice identifications by the victims did not implicate the defendant's right to counsel under the sixth and fourteenth amendments to the United States constitution. See *Passman* v. *Blackburn,* 652 F.2d 559, 565–66 (5th Cir. 1981), cert. denied, 455 U.S. 1022, 102 S. Ct. 1722, 72 L. Ed. 2d 141 (1982); *Felix* v. *Cardwell,* 404 F. Sup. 165, 166 (D. Ariz. 1975). The trial court did not err when it refused to suppress the voice identifications on the ground that the defendant's right to counsel had been violated.

There is no error.

In this opinion the other justices concurred.