## STATE OF CONNECTICUT *v.* ROSCOE JOHNSON (10084)

O'CONNELL, FOTI and CRETELLA, Js.

Argued September 28—decision released December 1, 1992

*Richard Emanuel,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard L. Palombo, Jr.,* assistant state's attorney, for the appellee (state).

CRETELLA, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of possession of narcotics with the intent to sell in violation of General Statutes § 21a-277 (a).[1] The defendant claims that the trial court improperly (1) admitted into evidence a prior conviction identical to the crime charged, (2) imposed a fine on him despite his apparent indigence, and (3) charged the jury on reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 18, 1990, Officer Roberto Melendez of the Bridgeport police department was patrolling the Father Panik Village area of Bridgeport. Toward midday, an individual approached Melendez and explained that he had observed a black male standing in a court-

---

[1] The defendant was charged in a substitute information with possession of narcotics with intent to sell; General Statutes § 21a-277 (a); and possession with intent to sell by a person who is not drug-dependent. General Statutes § 21a-278 (b). He was found not guilty of violating General Statutes § 21a-278 (b). General Statutes § 21a-277 (a) provides in pertinent part: "Any person who . . . possesses with the intent to sell or dispense . . . any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

yard near buildings twenty-three and twenty-seven holding a large bag of crack cocaine. The informant also described the person's clothing.

In a marked patrol car, Melendez approached the area in question and positioned the car so that his view of the courtyard was unobstructed. From a distance of roughly 250 feet, Melendez observed a black male matching the description given by the informant. Melendez later identified this person as the defendant. According to Melendez, the defendant placed a brown paper bag underneath a tree stump and sat down on a nearby concrete pylon.

At this point, Melendez requested backup support and drove toward the courtyard. When additional police arrived, Melendez left his car, walked over to the tree stump and found the brown bag that the defendant had placed under the stump. After a field test revealed that the bag contained crack cocaine and heroin, the police arrested the defendant who had remained seated during the investigation.

During the trial, there was substantial testimony on the issue of the defendant's addiction to drugs. Over the defendant's objection, testimony was also admitted to establish that the defendant had been convicted in 1987 of possession of narcotics with the intent to sell. Ultimately, the jury returned a verdict of guilty of possession with the intent to sell. The trial court sentenced the defendant to the statutory maximum of fifteen years and imposed a fine of $50,000.[2] This appeal followed.

I

The defendant first claims that the trial court improperly admitted into evidence the *name* of a prior felony

---

[2] The judgment mittimus directed in pertinent part that "said defendant pay to the State of Connecticut the amount of fines . . . now unpaid as shown below [i.e., $50,000] and be committed to the above facility in default of payment of said fees."

conviction. Specifically, the defendant asserts that the admission of the precise name of the felony was unfairly prejudicial because the prior conviction was identical to the crime for which the defendant was on trial. We disagree.

The following additional facts are necessary to the resolution of this issue. The defendant filed a motion in limine seeking the exclusion of any testimony regarding the defendant's criminal history, in particular, his conviction for possession of narcotics with intent to sell. Again, the theory was that the conviction, being identical to the pending charges, would unfairly prejudice the defendant. The trial court denied the motion. After the completion of the state's case, defense counsel indicated that the defendant would testify and asked the court to reconsider its earlier ruling on the motion in limine. The court then modified its previous ruling to allow the state to elicit testimony as to the felony conviction, but only to the extent that it remained unnamed.

During his direct examination, the defendant acknowledged that in 1987 he had been convicted of two felonies, which arose out of his addiction, but he did not specify the underlying offenses. Defense counsel then asked, "Do you deal drugs to maintain your lifestyle?" The defendant answered, "No, I can't." Upon the completion of direct examination, the court excused the jury and entertained argument by the state that the defendant had "opened the door" for a rebuttal when he denied dealing drugs. The court ruled that the state could question the defendant as to the name of the prior drug related conviction. The state then elicited testimony in which the defendant acknowledged his felony conviction for possession of narcotics with intent to sell.

At the outset we note that "[o]ur standard of review regarding challenges to a trial court's evidentiary rul-

ings is clear. ' "Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." ' " *State* v. *Indrisano,* 29 Conn. App. 283, 291, 613 A.2d 1375 (1992), quoting *State* v. *Alvarez,* 216 Conn. 301, 306, 579 A.2d 515 (1990). It is well established that the trial court has discretion on the admissibility of prior convictions. In such instances, the test is whether the "prejudicial effect of the evidence did not outweigh its probative value." *State* v. *Rivera,* 221 Conn. 58, 72, 602 A.2d 571 (1992).

The defendant relies heavily on our Supreme Court's decision in *State* v. *Geyer,* 194 Conn. 1, 15, 480 A.2d 489 (1984). There, the court held that the defendant's prior convictions, being similar to the charges then pending, "gave rise to extraordinary prejudice that far outweighed their marginal probative value as to the defendant's credibility." Id. The court, therefore, concluded that the prior convictions were inadmissible. Id.

Where, as the defendant did here, a party "opens the door" to a subject that goes directly to the credibility of the witness, he does so at his risk. In such cases, the rule is that "a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject." *State* v. *Graham,* 200 Conn. 9, 13, 509 A.2d 493 (1986). That is the case "[e]ven though the rebuttal evidence would ordinarily be inadmissible on other grounds . . . ." Id.; see also *State* v. *Paulino,* 223 Conn. 461, 467, 613 A.2d 720 (1992). The reason for such a rule is that it "prevent[s] a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context. . . ." (Internal quotation marks omitted.) *State*

v. *Paulino,* supra, quoting *United States* v. *Lum,* 466 F. Sup. 328, 334 (D. Del. 1979).

In this context, we conclude that the defendant's reliance on *State* v. *Geyer,* supra, is misplaced in this case. While it is true that the defendant's prior conviction involved a crime identical to the crime now at issue, the fact remains that defense counsel "opened the door" for the state's rebuttal. In response to questioning by defense counsel, the defendant testified that he did not sell drugs to maintain his lifestyle. This testimony suggested the nonexistence of the defendant's prior conviction for possession with intent to sell and squarely implicated the defendant's credibility. Accordingly, we cannot conclude that the trial court abused its discretion in permitting the prosecution to elicit from the defendant the name of his prior drug related conviction.

## II

The defendant's next claim is that the trial court's imposition of a fine was improper in light of his apparent indigence. We disagree.

Our recent decision in *State* v. *Zakrzewski,* 26 Conn. App. 716, 603 A.2d 432 (1992), is thoroughly dispositive of this claim. In *Zakrzewski,* this court held that "the possibility that the defendant may be incarcerated for his failure to pay will not arise, as a practical matter, until he has served his sentence." Id., 719. Therefore, a challenge to the fine imposed is not ripe for review until the failure to pay becomes the cause of any prolonged incarceration. Id. We remain mindful of the United States Supreme Court's mandate that the state may not "subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." *Williams* v. *Illinois,* 399 U.S. 235, 241–42, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970). In this case, however, the defendant's indigence will not affect the period of

incarceration until the end of the fifteen year sentence. As such, our decision in *State* v. *Zakrzewski,* supra, is controlling, and the defendant's claim must fail.

## III

The defendant's final claim is that the trial court improperly instructed the jury on "reasonable doubt" in violation of the due process clauses of our state and federal constitutions.[3] Specifically, the defendant challenges the trial court's definition of reasonable doubt as "a doubt for which a valid reason may be assigned." We disagree.

As a threshold matter, the defendant's failure to object to this portion of the jury instruction militates against the reviewability of his claim. Recognizing this deficiency, the defendant seeks to invoke *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), which permits appellate review of unpreserved claims that implicate clear constitutional rights. The doctrine of *State* v. *Golding,* supra, is unavailing, however, in this case because our Supreme Court has specifically upheld the constitutionality of a jury charge identical to the one before us. *State* v. *Thomas,* 214 Conn. 118, 120, 570 A.2d 1123 (1990). In short, because the trial court's instruction did not infringe on a clear constitutional right, we are unwilling to review the defendant's claim under *State* v. *Golding,* supra, 239–40.[4] *State* v. *Thomas,* supra; *State* v. *Smith,* 26 Conn. App. 279, 280–82, 600 A.2d 1036 (1991).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] See Conn. Const., art. I, § 8; U.S. Const., amends. V and XIV.

[4] Practice Book § 4185 provides in pertinent part that "the [appellate] court may in the interest of justice notice plain error not brought to the attention of the trial court." Again, however, our decision in *State* v. *Thomas,* 214 Conn. 118, 570 A.2d 1123 (1990), is dispositive as that case approved of a charge identical to the one before us. Thus, there are no grounds on which we can conclude that the instruction constituted plain error.