## STATE OF CONNECTICUT *v.* TERRENCE GOMEZ (14447)

PETERS, C. J., CALLAHAN, BORDEN, NORCOTT and SANTANIELLO, Js.

Argued February 11—decision released April 13, 1993

*Lauren Weisfeld,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David Gold,* supervisory assistant state's attorney, for the appellee (state).

SANTANIELLO, J. The defendant, Terrence Gomez, appeals[1] from the judgment of conviction, after a jury trial, of the crimes of felony murder in violation of General Statutes § 53a-54c,[2] kidnapping in the first degree in violation of General Statutes §§ 53a-92 (a) (2) and 53a-8,[3] and conspiracy to commit kidnapping in the first

---

[1] The defendant appeals to this court pursuant to General Statutes § 51-199 (b) (3), which provides that "an appeal in any criminal action involving a conviction for a capital felony, class A felony or other felony . . . for which the maximum sentence which may be imposed exceeds twenty years," shall be taken directly to the Supreme Court.

[2] General Statutes § 53a-54c provides in pertinent part: "A person is guilty of felony murder when, acting either alone or with one or more persons, he commits or attempts to commit . . . kidnapping . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[3] General Statutes § 53a-92 (a) (2) provides in pertinent part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . he restrains the person abducted with the intent to (A) inflict physical injury upon him . . . or (C) terrorize him or a third person . . . ."

General Statutes (Rev. to 1989) § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to

degree in violation of General Statutes §§ 53a-92 and 53a-48.[4] The defendant claims that: (1) the evidence was insufficient to support the jury's determination that the victim's death occurred in furtherance of the kidnapping; and (2) the trial court improperly instructed the jury on reasonable doubt. We affirm.

The jury could reasonably have found the following facts. On November 7, 1989, shortly after 10 p.m., the defendant and three other men, two of whom were armed with guns, removed the victim from his car at gunpoint. The defendant and two of the men walked the victim down the street while the fourth man followed in the victim's car. The victim was forced at gunpoint into the rear seat of his car and was driven away. Some of the men followed in another car.[5]

Approximately thirty minutes later, a local resident heard loud "rapping noises" outside his window. Fifteen minutes later, the resident went outside to investigate and found the victim's body lying along the side of his driveway, and the victim's car parked at the bottom of his driveway. The victim had died from ten gunshot wounds from at least two guns.

The police found the defendant's fingerprint on the right rear interior door handle of the victim's car. The victim's car had been rented by a friend of the victim who did not know the defendant. The jury could have

---

engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[4] General Statutes § 53a-48 provides in relevant part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[5] It is unclear which men left the scene of the kidnapping in which car. Witnesses did testify, however, that the defendant participated in the kidnapping and was no longer in the area after the cars had left.

inferred, therefore, that the defendant's fingerprint had been left in the car during the kidnapping.

I

The defendant first claims that the evidence before the trial court was insufficient to support his conviction of felony murder. The defendant contends that, because all the elements necessary to establish the crime of kidnapping had occurred prior to the murder, the murder could not have occurred "in the course of" and "in furtherance of" the kidnapping as required by General Statutes § 53a-54c. We disagree.

In reviewing an insufficiency of the evidence claim, " '[w]e first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt.' " *State* v. *Lewis,* 220 Conn. 602, 606, 600 A.2d 1330 (1991); *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991).

General Statutes § 53a-92 (a) (2) defines kidnapping as the abduction[6] of another and the restraint[7] of that person with the intent to inflict physical injury upon or terrorize that person. The legislature has not

---

[6] General Statutes (Rev. to 1989) § 53a-91 (2) provides: " 'Abduct' means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use physical force or intimidation."

[7] General Statutes § 53a-91 (1) provides: " 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . ."

"imposed any time requirement for the restraint, nor [imposed] any distance requirement for the asportation to constitute the crime of kidnapping." *State* v. *Chetcuti*, 173 Conn. 165, 170, 377 A.2d 263 (1977). The defendant has confused the point in time at which there is sufficient evidence to convict a person of kidnapping with the point at which the kidnapping has ended. The defendant correctly states that "[f]rom the moment [the victim] was removed from the car and walked down the street, and certainly once he was driven away, he had already been kidnapped. His kidnappers could at that point be convicted of the kidnapping . . . ." We disagree, however, with the defendant's contention that, at this point, the kidnapping was a completed crime. Kidnapping is a continuing crime. *State* v. *Smith*, 198 Conn. 147, 155, 502 A.2d 874 (1985); *People* v. *La Marca*, 3 N.Y.2d 452, 460, 144 N.E.2d 420, 165 N.Y.S.2d 753 (1957).

Because kidnapping involves interfering with the victim's liberty, it continues until that liberty is restored. See, e.g., *State* v. *Jefferies*, 304 S.C. 141, 145, 403 S.E.2d 169 (S.C. App. 1991) ("kidnapping commences when one is wrongfully deprived of his freedom and continues until freedom is restored"); *State* v. *Dove*, 52 Wash. App. 81, 88, 757 P.2d 990 (1988) ("kidnapping . . . is continuously committed as long as the unlawful detention of the kidnapped person lasts"). Because the victim in this case was never released, the kidnapping ended only with his death. Accordingly, the state provided sufficient evidence to establish that the defendant committed felony murder. Felony murder occurs when, in the course of and in furtherance of another crime, one of the participants in that crime causes the death of a person who is not a participant in the crime. General Statutes § 53a-54c. The two phrases, "in the course of" and "in furtherance of,"

limit the applicability of the statute with respect to time and causation. *State* v. *Young,* 191 Conn. 636, 643–44, 469 A.2d 1189 (1983).

The phrase "in the course of" focuses on the temporal relationship between the murder and the underlying felony. We have previously addressed the meaning of the phrase "in the course of" as an element of robbery, under General Statutes § 53a-133. "[I]f the use of force occurs during the continuous sequence of events surrounding the taking or attempted taking, even though some time immediately before or after, it is considered to be 'in the course of' the robbery or the attempted robbery within the meaning of the statute." *State* v. *Ghere,* 201 Conn. 289, 297, 513 A.2d 1226 (1986); *State* v. *Crosswell,* 223 Conn. 243, 250–51, 612 A.2d 1174 (1992). Because we have defined the phrase "in the course of" to include the period immediately before or after the actual commission of the crime, the murder in this case, which took place during the period of the crime itself, occurred "in the course of" the kidnapping within the meaning of § 53a-54c.

"[T]he phrase 'in furtherance of' was intended to impose the requirement of a relationship between the underlying felony and the homicide beyond that of mere causation in fact, similar to the concept of proximate cause in the law of torts. Primarily its purpose was to limit the liability of a person whose accomplice in one of the specified felonies has performed the homicidal act to those circumstances which were within the contemplation of the confederates to the undertaking . . . ." *State* v. *Young,* supra, 642. When, as here, the participants have kidnapped the victim at gunpoint, a jury may find that it is within the contemplation of those participants that the victim might be shot and killed.

The victim was killed approximately thirty minutes after he was abducted at gunpoint. He died from gun-

shot wounds that came from two guns. Two of the kidnappers were armed with guns. The kidnapping was ongoing because the victim's liberty had not been restored. The jury could reasonably have inferred that the victim was killed in the course of and in furtherance of that kidnapping. The trial court, therefore, properly rendered a judgment sentencing the defendant for having committed the crime of felony murder.

## II

Although the defendant neither submitted an instruction on reasonable doubt to the trial court nor took an exception to the instruction given by the trial court, he now contends that he is entitled to a new trial because the instruction on reasonable doubt that the trial court gave[8] violated his due process right to a fair trial. He seeks review of this claim under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 828 (1989).[9] The challenged instructions are similar to jury instructions that have previously been approved by this court. See, e.g., *State* v. *Dyson,* 217 Conn. 498, 504–505 n.3, 586 A.2d 610 (1991); *State* v. *Johnson,* 214 Conn. 161, 177–80, 571 A.2d 79 (1990); *State* v. *Thomas,* 214 Conn. 118, 119–20, 570 A.2d 1123 (1990); *State* v. *Smith,* 210 Conn. 132, 147–50, 554 A.2d 713 (1989); *State* v. *Lytell,* 206

---

[8] As a part of its charge, the trial court instructed the jury that reasonable doubt is "a doubt for which a reasonable man or woman can give a valid reason," and that "[a] reasonable doubt is a doubt which would cause you as reasonable and prudent men and women to hesitate to act in the more weighty and important matters relating to your own affairs."

[9] A defendant may prevail on an unpreserved claim of constitutional error only if he successfully establishes each of the following conditions: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Conn. 657, 664–65, 539 A.2d 133 (1988); *State* v. *Lee-can,* 198 Conn. 517, 538–39, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Findlay,* 198 Conn. 328, 346, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986); *State* v. *Derrico,* 181 Conn. 151, 170–71, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

In the above cases, we concluded that the same or similar instructions did not decrease the state's burden of proof when viewed in the context of the entire charge. See *State* v. *Lytell,* supra, 664 (test is whether the jury charge as a whole presents the case adequately to the jury so that no injustice is done). In this case as well, the jury charge as a whole clearly defined the proof beyond a reasonable doubt standard. The defendant's constitutional right to a fair trial has not been violated in this case.[10]

Because we find neither a clear violation of a fundamental constitutional right nor a deprivation of a fair trial, the defendant's unpreserved claim does not satisfy the second and third conditions set forth in *State* v. *Golding,* supra. Therefore, the defendant cannot prevail on this claim.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[10] The defendant additionally invites us to review this claim in light of the United States Supreme Court's recent decision in *Cage* v. *Louisiana,* 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990). The improper instruction given in *Cage* "equated a reasonable doubt with a 'grave uncertainty' and an 'actual substantial doubt,' and stated that what was required was a 'moral certainty' that the defendant was guilty." Id., 41. The instruction before this court, however, contains none of the phrases that the United States Supreme Court found objectionable. *Cage* does not, therefore, require us to reconsider our previous decisions.