STATE OF CONNECTICUT *v.* THURMAN GOODMAN
(12271)

FOTI, LANDAU and HEIMAN, Js.

---

Argued June 2—decision released August 16, 1994

*Louis S. Avitabile,* special public defender, with whom was *Meryl Anne Spat,* for the appellant (defendant).

*Margaret Gaffney Radionovas,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Mitchell S. Brody* and *Corinne L. Klatt,* assistant state's attorneys, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1),[1] as a lesser included offense of murder in violation of General Statutes § 53a-54a. The

---

[1] General Statutes § 53a-55 (a) (1) provides: "MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

defendant claims that the trial court improperly (1) instructed the jury on the reasonable doubt standard and (2) refused to allow potential verdicts to be announced as partial verdicts. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of May 25, 1991, the defendant observed his wife getting out of the victim's car. After hitting his wife in the face, he approached the victim, who was still seated in the driver's seat of his automobile, opened the driver's door, pulled out a knife with a three and one-half inch cutting blade from his pocket and stabbed the victim several times in the legs and chest. The victim begged not to be killed, and tried to avoid the attack by moving to the passenger side of the car. He also attempted to ward off the defendant by kicking him. The defendant grabbed the victim's feet and pulled him out of the car and onto the ground. After being told by a bystander to leave the victim alone, the defendant folded up the knife, put it in his pocket and left the scene. The victim had multiple stab wounds to the chest, left arm and left leg. He died as a result of a four and three-quarter inch deep stab wound to the chest.

I

The defendant first claims that the trial court improperly instructed the jury on reasonable doubt. The court instructed the jury that a reasonable doubt is "a doubt for which a reasonable person can give a valid reason." The defendant alleges that this instruction violated his constitutional rights to due process and trial by jury.[2] He asserts that this instruction amounts to an articu-

---

[2] The defendant claims violations of his due process rights under the fifth and fourteenth amendments, and his right to a jury trial under the sixth amendment to the United States constitution.

lation requirement and as such it reduces or dilutes the state's burden of proof, or shifts that burden to the defendant.

Before reviewing the merits of the defendant's first claim, we note that the defendant correctly points out that his challenge to this jury instruction was not "unpreserved." The defendant's claim was properly preserved for purposes of appeal, so our inquiry is not limited to whether the instruction infringed on a clear constitutional right, but, instead, we afford the claim complete review.[3]

The challenged instructions are similar or identical to jury instructions that have previously been approved by our Supreme Court. *State* v. *DePastino,* 228 Conn. 552, 572, 638 A.2d 578 (1994) ("a doubt for which a valid reason can be assigned"); *State* v. *Gomez,* 225 Conn. 347, 353, 622 A.2d 1014 (1993) ("a doubt for which a reasonable man or woman can give a valid reason"); *State* v. *Adams,* 225 Conn. 270, 290, 623 A.2d 42 (1993) ("a doubt for which a valid reason can be assigned"); *State* v. *Derrico,* 181 Conn. 151, 171, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980) ("one for which you can, in your own mind, conscientiously give a reason"); *State* v. *Johnson,* 29 Conn. App. 584, 590, 617 A.2d 174 (1992) ("a doubt for which a valid reason may be assigned"),

---

[3] Both this court and our Supreme Court have addressed a defendant's attempt to obtain appellate review of an unpreserved claim challenging similar instructions on the definition of reasonable doubt. Several cases have held that because the trial court's instruction did not infringe on a clear constitutional right, the same instruction having been upheld by our Supreme Court as constitutional, there would be no review of the unpreserved claim under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). See *State* v. *DePastino,* 228 Conn. 552, 573, 638 A.2d 578 (1994); *State* v. *Johnson,* 29 Conn. App. 584, 590, 617 A.2d 174 (1992), appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1993). Here, the defendant properly preserved his claim for appellate review.

appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1993) (certification improvidently granted).

The defendant argues that our Supreme Court "should reconsider its stance on the issue." This court does not reevaluate Supreme Court decisions; we are bound by those decisions. *In re David E.,* 4 Conn. App. 653, 658, 496 A.2d 229 (1985).

Our Supreme Court has also stated that the same or similar instructions "did not decrease the state's burden of proof when viewed in the context of the entire charge"; *State* v. *Gomez,* supra, 225 Conn. 354; and "did not dilute the defendant's presumption of innocence." *State* v. *Adams,* supra, 225 Conn. 291; see also *State* v. *Johnson,* 214 Conn. 161, 571 A.2d 79 (1990); *State* v. *Thomas,* 214 Conn. 118, 570 A.2d 1123 (1990); *State* v. *Lytell,* 206 Conn. 657, 539 A.2d 133 (1988); *State* v. *Leecan,* 198 Conn. 517, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Findlay,* 198 Conn. 328, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986).

The test to be applied when reviewing a challenge to jury instructions is whether the jury charge as a whole presents the case adequately to the jury so that no injustice is done; *State* v. *Lytell,* supra, 206 Conn. 664; whether that portion of the charge relating to the concept of reasonable doubt, read as a whole, could properly and sufficiently guide the jury, and fairly present the case to the jury. *State* v. *Derrico,* supra, 181 Conn. 171. We view the charge as a whole and consider how the jury was likely to hear it and how the jury was probably affected by it. *State* v. *Ortiz,* 217 Conn. 648, 666, 588 A.2d 127 (1991).

We have reviewed the trial court's total charge on the issue of reasonable doubt and conclude that it was

both adequate and correct in presenting that legal concept to the jury. The challenged instruction did not compel a juror to explain or in any way articulate to the other jurors any reason for his or her doubt. The focus in the instruction was on reasons formulated by jurors through the use of their own rational thought processes.[4] An articulation requirement is not created by an instruction that focuses on a reason for a doubt arrived at in the juror's own mind; instead, an articulation requirement would require the juror to state that reason to other jurors. *State* v. *Campbell,* 225 Conn. 650, 666, 626 A.2d 287 (1993). The instruction herein did not require, nor suggest as necessary, that a juror explain to fellow jurors his or her reason for having a reasonable doubt. See *State* v. *Jeffrey,* 220 Conn. 698, 719, 601 A.2d 993 (1991), cert. denied,      U.S.    , 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992). The jury charge as a whole clearly and correctly defined the proof beyond a reasonable doubt standard. The defendant's constitutional rights to due process and trial by jury have not been violated in this case.

## II

The defendant also claims that the trial court improperly disallowed potential verdicts in violation of Practice Book § 867[5] and in violation of his constitutional right to have a fair trial by a properly instructed jury.

---

[4] The instruction at issue was followed by an instruction that "a reasonable doubt is not a doubt raised by one who questions for the sake of questioning. A reasonable doubt is not a surmise, or speculation, conjecture or an imaginary doubt."

[5] Practice Book § 867 provides: "The verdict shall be general, but if the judicial authority instructs the jury regarding the defense of mental disease or defect, the jury, if they so find, shall declare the finding in their verdict. The verdict shall be unanimous and shall be announced by the jury in open court. If there are two or more defendants, the jury may return a verdict with respect to any defendant as to whom they agree. The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein, if the attempt is an offense."

The defendant was charged by information with the crime of murder in violation of General Statutes § 53a-54a. The state filed a request to charge on the two lesser included offenses of intentional manslaughter in violation of General Statutes § 53a-55 (a) (1), and reckless manslaughter with extreme indifference to human life in violation of General Statutes § 53a-55 (a) (3). The defendant requested a charge on a lesser included offense of criminally negligent homicide in violation of General Statutes § 53a-58. The trial court complied by instructing the jury on the greater and the three lesser included offenses. The court instructed the jury that the defendant was charged with the crime of murder and that it should first consider that charge. The jury was told that it could consider each lesser included offense if the jury first found either that the state had failed to meet its burden of proof on the greater offense, or if the jury had failed to agree unanimously on a greater offense.[6]

Following the court's instruction on October 14, 1992, the jury deliberated over the next five days. It interspersed its deliberations with requests to read back the court's charge on various offenses and also of the testimony of a number of witnesses. On October 22, 1992, the sixth day of deliberations, the jury sent the following note: "Your Honor, good morning. The jury is stuck. We are unable to reach a verdict at this time. Could you give us some direction? Thank you."

After repeating some of the instruction, including the possible verdicts that could be reached, the court concluded: "I understand . . . that the jury has not reached any one of these possible verdicts. Is that cor-

---

[6] The defendant requested, and the court gave, the reasonable efforts instruction leading to a lesser included offense. See *State* v. *Sawyer,* 29 Conn. App. 68, 614 A.2d 471 (1992). Our Supreme Court, in reversing *Sawyer,* subsequently dealt with the "reasonable efforts" instruction. *State* v. *Sawyer,* 227 Conn. 566, 630 A.2d 1064 (1993).

rect, yes or no?" The foreperson responded, "No." The court then responded: "Then if that's not correct, then I'll ask you to retire to the deliberation room and be prepared to report your verdict. Please retire." Thereafter, the court met with counsel in chambers. The court interpreted the note as an indication that the jury had been unable to reach a verdict and decided that it would not elicit a partial verdict at that time. The court ruled that it would reinstruct the jury on the deliberation process and the unanimity requirement. It did so, and also gave a Chip Smith instruction.[7] The defendant expressed exception to this ruling and moved for a mistrial. The defendant's motion for a mistrial was denied.

Thereafter, on October 23, 1992, the defendant filed a supplemental request to charge[8] that was given by the court to the jury on October 27, 1992. On Octo-

---

[7] *State* v. *Smith,* 49 Conn. 376 (1881).

[8] The defendant's request for supplemental instructions provided: "At the end of your deliberations when your verdicts and decisions are taken, the clerk will ask you as to each charge starting with *murder:*

"Is the defendant Guilty/Not Guilty or you are unable to unanimously agree?

"As to *manslaughter 1st degree with intent:*

"Is the defendant Guilty/Not Guilty or you are unable to unanimously agree?

"As to *manslaughter 1st degree with recklessness:*

"Is the defendant Guilty/Not Guilty or you are unable to unanimously agree?

"As to *criminally negligent homicide:*

"Is the defendant Guilty/Not Guilty or you are unable to unanimously agree?

"It is not necessary that the defendant be found guilty or not guilty as to each of the four charges. You may find the defendant not guilty as to all four charges, or you may find the defendant not guilty of one or more of the four charges or have one of more decisions of no agreement.

"But there can only be a finding of guilty as to only one of the four charges, if you choose to find the defendant guilty at all.

"It is only necessary for you to continue to deliberate if you have a decision of no agreement as to all four charges."

ber 29, 1992, the jury requested additional instruction on intent, and, on October 30, 1992, the jury announced that it had reached a verdict. The clerk of the court asked the foreperson of the jury whether the jury had found the defendant guilty, or not guilty, on the charge of murder, or whether the jury had been unable to agree unanimously. The foreperson responded, "Not guilty." The clerk then made the same inquiry as to the lesser included crime of manslaughter in the first degree under § 53a-55 (a) (1), and the foreperson replied, "Guilty." The court accepted and recorded the verdict, which, upon polling, was collectively and individually affirmed by the jurors. The court denied the defendant's motion to inquire of the jury what verdicts, if any, it had reached on October 22, 1992.

On November 3, 1992, the defendant filed postconviction motions in arrest of judgment, for judgment of acquittal, and for a new trial. He argued that the jury verdict returned October 30, 1992, was actually the second verdict, as one previously had been reached by that jury on October 22, 1992. The defendant claimed that the court committed harmful error by not allowing the October 22, 1992 verdict to be announced in court. The motions were denied. The court noted that the first time the jury reported that it was prepared to announce a verdict was on October 30, 1992, and that on October 22, 1992, the jury was "stuck," meaning that only a partial verdict might be available. The court reasoned that no requirement existed mandating the taking of a partial verdict, and that there existed in this case, as in all cases, a necessity of protecting the integrity of the deliberation process.

The defendant argues on appeal that there were four separate charges on which four separate verdicts could be rendered and, therefore, that the jury instructions were the legal equivalent of an information charging four separate counts. We do not agree. The defendant

was charged by information filed on August 18, 1992, with one count of murder in violation of General Statutes § 53a-54a.[9] The fact that the trial court, as requested by the parties, instructed the jury on the three lesser included offenses did not authorize the jury to reach a verdict on successive lesser offenses before it reached a unanimous decision on the greater offense. Unlike an information charging four separate counts, the defendant under the single count information in this case could not be convicted of more than one offense. Also, under an information that charges four separate counts, a jury must deliberate and deliver a verdict as to each and every count. Here, the jury, if unanimous as to guilt, could deliver a verdict on only the charged offense. Our Supreme Court has stated that "[o]nly after it has confronted and unanimously completed the difficult task of deciding the guilt or innocence of the accused as to the charged offense should the jury consider lesser included offenses. Anything less [than such consideration] dilutes the right of the state and the defendant to have the jury give its undivided attention and most serious deliberations to the offense with which the defendant is charged and flies in the face of [a] unanimity requirement . . . ." *State* v. *Sawyer*, 227 Conn. 566, 583, 630 A.2d 1064 (1993).

Further, the defendant's argument misconstrues the nature of partial verdicts. Only a general verdict is permitted in Connecticut on a single count information. See Practice Book § 867. The taking of a "partial verdict" in a multicount information allows the trial court to accept verdicts on those counts on which the jury has unanimously agreed and to declare a mistrial as to the others. Where the defendant was charged by

[9] In reply to the defendant's motion for a bill of particulars, the state filed a bill of particulars setting forth the charge, statutory citation, date, time and place of the offense, specific acts constituting the necessary elements of the crime of murder and the name of the victim.

information with three counts of murder, our Supreme Court stated that "it is our practice to require separate verdicts on each count . . . The verdict of guilty on one count left the others undecided. The court, after accepting the verdict on the first count, might have declared a mistrial as to the others and discharged the jury [or might have sent the jury back for further consideration of the other two counts]." (Citations omitted.) *State* v. *Bradley,* 134 Conn. 102, 114, 55 A.2d 114 (1947), cert. denied, 333 U.S. 827, 68 S. Ct. 453, 92 L. Ed. 2d 1112 (1948).[10]

The record plainly discloses that the jury was "stuck" and therefore unable to agree unanimously; the jury was deadlocked. The record is not sufficient to determine the precise meaning of the negative response by the foreperson to the court's inquiry as to whether the jury had reached any of the possible verdicts.[11] The court correctly interpreted the note from the jury as an indication that the jury was unable to agree. The court, in exercising its discretion, required the jury to continue its deliberations. Practice Book § 865. The defendant does not claim, nor do we conclude, that the court abused its discretion in this regard. The defendant's argument, that the trial court improperly failed to have the jury either announce or record the "verdicts they had reached" on October 22, 1992, must also fail simply because no such verdict can be found to have existed on that date.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] Since multicount informations require a separate verdict as to each count on which the jury can agree, "partial verdicts" are truly not allowed even in multicount informations. Such verdicts are partial only in the sense that they do not dispose of the entire information.

[11] The negative response to the question, "Is it correct that the jury has not reached any one of the possible verdicts?" can be argued to mean "No [we the jurors have not reached any one of the possible verdicts]."