STATE OF CONNECTICUT *v.* BRUCE C. ZOLLO
(13630)

O'CONNELL, SCHALLER and SPEAR, Js.

Argued September 14, 1994—decision released February 7, 1995

*Deborah Del Prete Sullivan,* assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, was *Mary M. Galvin,* for the appellee (state).

SCHALLER, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A),[2] sexual assault in a spousal relationship in violation of General Statutes § 53a-70b,[3] and attempt to commit sexual assault in a spousal relationship in violation of General Statutes §§ 53a-49 (a)[4] and 53a-70b. The defendant was found not guilty of a separate count that charged him with robbery in the first degree in violation of General Statutes § 53a-134 (a) (3). The defendant claims that the trial court improperly (1) permitted the DNA expert witness to testify that the possibility that the DNA profile of a semen sample found at the crime scene came from someone other than the defendant was not statistically significant, (2) permitted the expert to testify to the statistical probabil-

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4028, the Supreme Court transferred the appeal to this court.

[2] General Statutes § 53a-92 (a) provides in pertinent part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[3] General Statutes § 53a-70b (b) provides: "No spouse or cohabitor shall compel the other spouse or cohabitor to engage in sexual intercourse by the use of force against such other spouse or cohabitor, or by the threat of the use of force against such other spouse or cohabitor which reasonably causes such other spouse or cohabitor to fear physical injury."

[4] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

ity of the DNA match, (3) permitted the expert to testify to the statistical significance of a nonmatching DNA probe, (4) instructed the jury (a) to apply a conclusive presumption and directed a verdict of guilty, (b) on the threat of use of force, a statutory alternative the defendant claims was unsupported by the evidence, (c) on attempt, thus violating the defendant's right not to be convicted except upon proof beyond a reasonable doubt, and (d) on the presumption of innocence and the meaning of reasonable doubt in a manner that violated the defendant's due process right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 11, 1991, the victim, the estranged wife of the defendant, was assaulted by an unknown assailant wearing a ski mask, a jacket, and a long pea coat. At aproximately 12:35 p.m., the assailant appeared inside the victim's cellar with a hunting knife in his hand. He grabbed her by the hair, cut her finger with the knife, put a bag over her head and pulled her upstairs, where he handcuffed her hands, wrapped her head in duct tape, and sexually assaulted her for approximately one and one-half hours. During the assault, he also urinated on the victim's chest twice.

The assailant spoke only twice. In response to the victim's plea that he not kill her because she was the mother of two children, he responded in a low voice, "I know." Just before he left the crime scene, the assailant also stated, "Give me fifteen minutes" in a similar low voice.

At approximately 2 p.m. on the date of the assault, the victim's neighbor was operating a remote control car in the street in front of the victim's home. A vehicle that the neighbor recognized as belonging to the victim sped past. The neighbor recognized the driver as the defendant, Bruce C. Zollo. The neighbor also

observed that the defendant was adjusting a woolen cap on his head as he drove by.

The neighbor then saw the victim standing in her driveway, wearing only a small jacket or vest. Her head was wrapped in duct tape that covered her eyes, and she was bleeding. The neighbor led the victim into his house and called paramedics, who had difficulty removing the tape from the victim's head, even with the use of trauma scissors.

The victim had been married to the defendant for eight years at the time of the assault. The couple had separated because of the defendant's drug use. According to the defendant's friend, Paul Norris, the defendant, prior to the assault, had expressed a desire to take revenge on his wife for initiating the separation. The defendant asked Norris to participate in sexually assaulting the victim, but Norris refused.

Shortly after the assault, the defendant arrived at the victim's home and stated that he was concerned that his wife had been raped. While the police were gathering evidence in the victim's home, the defendant requested several times that he be allowed to clean the house before the police entered it. The police uncovered a towel stained with semen, from which the prosecution was able to gather a DNA sample for analysis by Harold Deadman, a forensics expert from the Federal Bureau of Investigation (FBI), who testified at trial.

## I

The defendant's first claim is that the trial court improperly allowed Deadman to testify as an expert witness that the chance that the DNA sample came from someone other than the defendant was "so small that . . . it would not be worth considering." The

defendant asserts that this testimony is an opinion on an ultimate issue in the case and, therefore, should not have been admitted.

Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. " 'The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done.' *State* v. *Boles*, 223 Conn. 535, 549, 613 A.2d 770 (1992)." *State* v. *Robinson*, 227 Conn. 711, 732, 631 A.2d 288 (1993); *State* v. *Merritt*, 36 Conn. App. 76, 82, 647 A.2d 1021, cert. granted, 231 Conn. 926, 648 A.2d 165 (1994). This standard does not vary for the testimony of expert witnesses. "Generally, expert testimony may be admitted if the witness has a special skill or knowledge, beyond the ken of the average juror, that, as properly applied, would be helpful to the determination of an ultimate issue. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Citations omitted; internal quotation marks omitted.) *State* v. *Forrest*, 216 Conn. 139, 147, 578 A.2d 1066 (1990). We review the defendant's claim in view of this broad standard.

The defendant asserts that identity is an essential fact, which the state must prove beyond a reasonable doubt to support a conviction. The determination of identity is solely the province of the jury. The defendant cites no case to support the proposition that an opinion as to evidence linking the defendant to a crime is an opinion on an ultimate issue. Our Supreme Court, in fact, has held that expert opinion testimony linking a defendant to a crime scene is admissible. *State* v. *Hasan*, 205 Conn. 485, 534 A.2d 877 (1987) (opinion that footprints belonged to defendant's shoes properly admitted); *State* v. *Ortiz*, 198 Conn. 220, 502 A.2d 400

(1985) (opinion that bite marks belonged to defendant properly admitted). Deadman's opinion as to the identity of the sperm donor similarly linked the defendant to the crime scene in this case.

We are unpersuaded by the defendant's argument that the trial court improperly allowed the expert witness to give an opinion on an ultimate issue by permitting testimony that the defendant was the likely source of the semen sample. Our Supreme Court has held that expert testimony on the ultimate issue of intent is inadmissible. *State* v. *Walton*, 227 Conn. 32, 59–60, 630 A.2d 990 (1993); *State* v. *Vilalastra*, 207 Conn. 35, 41, 540 A.2d 42 (1988). Nevertheless, " '[e]xperts can . . . sometimes give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass.' . . ." (Citations omitted.) *State* v. *Vilalastra*, supra, 41, quoting C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.17.3, p. 186. The trial court does not overstep its discretionary bounds where the opinion was necessary to aid the jury in understanding the expert witness' testimony. *State* v. *Forrest*, supra, 216 Conn. 147; *State* v. *Vilalastra*, supra, 42.

Deadman gave complex testimony concerning DNA and statistical probabilities relating to the science of matching DNA probes. A series of radioactive probes determines the DNA profile of a given sample. The testimony in question was admitted to assist the jury in understanding the testimony of the expert witness concerning his DNA analysis. We conclude that the trial court did not abuse its discretion by allowing the expert to give an opinion as to the identity of the semen sample because his opinion could reasonably have aided the jury in understanding the DNA testimony.

## II

The defendant next asserts that the trial court improperly allowed Deadman to testify to the statistical probability of the DNA match. The thrust of the defendant's argument is that the methods of analysis used by the FBI are not generally accepted by the scientific community and are, therefore, unreliable. The defendant argues that the testimony is inadmissible under the *Frye* standard for admissibility of scientific evidence. *Frye* v. *United States*, 293 F. 1013 (D.C. Cir. 1923).[5]

The defendant urges review of the admissibility of testimony based on the FBI's methods of statistical analysis. Having cited case law from other jurisdictions and scientific articles concerning the reliability of the FBI's methods, the defendant urges us to review the trial court's factual finding that the evidence met the *Frye* standard.

---

[5] "In *Frye*, the court set forth a special rule for the admission of testimony regarding scientific evidence. The court stated that '[j]ust when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained *general acceptance in the particular field in which it belongs.*' (Emphasis added.) *Frye* v. *United States*, supra, 293 F. 1014." *State* v. *Merritt*, supra, 36 Conn. App. 82. "While our Supreme Court has never explicitly adopted a statement of *Frye* that includes reference to the reliability of the scientific test or procedure, it has, in essence, affirmed that relationship." Id., 82 n.3; see also *State* v. *Hasan*, supra, 205 Conn. 490. In *State* v. *Sivri*, 231 Conn. 115, 154 n.31, 646 A.2d 169 (1994), a case challenging the admissibility of population frequency statistics to determine the significance of a DNA match, our Supreme Court noted that the United States Supreme Court has abandoned the *Frye* test. To date, our court has not followed suit. The trial court here applied the *Frye* test and, under the current state of the law in Connecticut, it was not plain error for it to do so. Because we hold that review of this unpreserved claim is not warranted, we express no opinion as to the continued viability of the *Frye* test in Connecticut.

We decline to review factual findings as to whether the DNA testimony satisfied the *Frye* standard for admissibility of scientific evidence. Although we will review a trial court's ruling as to whether a *Frye* finding must be made, we will not conduct an appellate level review of the facts relating to a *Frye* finding. *State* v. *Merritt*, supra, 36 Conn. App. 91. " 'It is not the function of this court to find facts. *State* v. *Reagan*, 209 Conn. 1, 8, 546 A.2d 839 (1980).' *State* v. *Rios*, 30 Conn. App. 712, 716, 622 A.2d 618 (1993)." *State* v. *Shanks*, 34 Conn. App. 103, 112–13, 640 A.2d 155, cert. denied, 229 Conn. 921, 642 A.2d 1216 (1994).

Likewise, we are not required to review a claim that was improperly preserved at trial. "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial . . . ." Practice Book § 4185. We, therefore, examine the record to discern whether the issue in question was raised at trial.

The defendant failed to preserve objections made to the testimony concerning statistical probabilities. Although the state made an offer of proof in response to the defendant's objection to the procedure's reliability, during this offer of proof, the defendant's counsel withdrew his objection to Deadman's testimony as to his statistical analysis. "We will not review on appeal rulings that the defendant requested or accepted at trial. *State* v. *Rutan*, 194 Conn. 438, 446, 479 A.2d 1209 (1984)." *State* v. *Murdick*, 23 Conn. App. 692, 699, 583 A.2d 1318, cert. denied, 217 Conn. 809, 585 A.2d 1233 (1991). We conclude that because the defendant withdrew his objections to the statistical probability testimony, he did not preserve the claim sufficiently. See id.

Nevertheless, the defendant urges review of the admissibility of the statistical analysis evidence under the plain error rule. Practice Book § 4185. The defendant argues that the issue of acceptance of DNA statisti-

cal probability testimony is so important to the development of the law in this state that it would be a miscarriage of justice not to decide the issue.

We will reverse a trial court's rulings on the basis of plain error only in the most limited circumstances. *State* v. *Jackson*, 34 Conn. App. 599, 608, 642 A.2d 738, cert. granted, 231 Conn. 917, 648 A.2d 165 (1994). "[I]t is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. *State* v. *Wright*, 207 Conn. 276, 288–89, 542 A.2d 299 (1988); *State* v. *Miller*, 202 Conn. 463, 469, 522 A.2d 249 (1987). . . . *State* v. *Boles*, 223 Conn. 535, 551, 613 A.2d 770 (1992); *State* v. *Sawyer*, 32 Conn. App. 854, 856–57, 632 A.2d 372, cert. denied, 228 Conn. 911, 635 A.2d 1230 (1993)." (Internal quotation marks omitted.) *State* v. *Jackson*, supra, 608.

The trial court's ruling that Deadman's testimony as to statistical probabilities was admissible does not merit plain error review. After hearing the expert testimony concerning the methods used by the FBI, the trial court made a *Frye* finding as to the acceptance of the DNA testimony within the scientific community and admitted the testimony. The state, moreover, presented additional evidence to support the inference that the defendant was the assailant in this case, such as testimony concerning the defendant's behavior on the day of the attack and Norris' testimony about the defendant's proposal that they assault the victim. Under the circumstances, we cannot say that the admission of Deadman's testimony as to statistical probabilities involves plain error.

## III

The defendant next asserts that the trial court should not have permitted Deadman to testify as to the statistical significance of the nonmatching band generated by one of the four probes. The expert testified that the analysis of the third DNA probe was inconclusive and could not be used to match the DNA sample to the defendant. The expert then testified as to his analysis of the DNA sample despite his statement that the third probe was inconclusive. The defendant claims that this testimony potentially was confusing to the jury because the expert's testimony was internally inconsistent.

The defendant did not properly preserve any objection to Deadman's testimony relating to the third probe of the DNA analysis. The defendant's counsel did not object to the testimony as it was presented at trial. In fact, as the state offered slides and transparencies relating to testimony concerning the third probe, the defendant's counsel specifically stated, both during the offer of proof and in the presence of the jury, that he had no objection to the admission of these items. "Practice Book § 4185 requires that appealable claims of error be distinctly raised at trial. See also Practice Book § 288; *State* v. *Weidenhof*, 205 Conn. 262, 273, 533 A.2d 545 (1987)." *State* v. *Forrest*, supra, 216 Conn. 146. We, therefore, decline to review the claim raised by the defendant.

The defendant, relying on his argument presented for the second issue, again urges plain error review of the admission of Deadman's testimony as to the nonmatching third probe. The defendant cites no case that supports the proposition that the uncontested admission of confusing testimony is plain error. We therefore conclude that this argument does not raise an error so obvious that its rejection will destroy confidence in the judiciary.

## IV

The defendant next raises several issues concerning the trial court's instructions to the jury. None of these claims was properly preserved at trial. The defendant urges review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. "The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Crosby*, 34 Conn. App. 261, 264, 641 A.2d 406, cert. denied, 230 Conn. 903, 644 A.2d 916 (1994). Furthermore, "[t]he appellate tribunal is free . . . to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra, 213 Conn. 240. We conclude that the record is sufficient to review the defendant's claims; thus, we will examine the claims under the remaining prongs of the *Golding* test.

## A

The defendant argues that the trial court charged the jury to make a conclusive presumption and directed a verdict of guilty, thus committing error under *Sandstrom* v. *Montana*, 442 U.S. 510, 99 S. Ct. 2540, 61 L. Ed. 2d 39 (1979). The defendant's claim is that the trial

court's instruction relating to the element of consent in the kidnapping charge relieved the state of its burden to prove the element beyond a reasonable doubt. The defendant focuses on the following language in the trial court's instruction: "If the acts complained of were accomplished by the use of force or violence no further proof is required to establish lack of consent upon the victim's part."

In examining a challenge to a trial court's instructions to a jury, we will look at the charge as a whole rather than consider particular language in isolation. *State* v. *Palmer*, 206 Conn. 40, 46, 536 A.2d 936 (1988). "It is well established that individual jury instructions are not to be judged in artificial isolation, but must be viewed in the context of the overall charge. *Cupp* v. *Naughten*, 441 U.S. 141, 146–47, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *State* v. *Silano*, 204 Conn. 769, 773, 529 A.2d 1283 (1987); *State* v. *Dolphin*, 195 Conn. 444, 451, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985)." *State* v. *Palmer*, supra, 46. Thus, we consider the defendant's assertions that the trial court's instructions were improper in light of the entire charge.

Although the defendant asserts that this claim is of constitutional magnitude, we conclude that the instruction in question does not rise to the level of a constitutional violation sufficient to pass the second prong of *Golding*. "Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." *State* v. *Golding*, supra, 213 Conn. 240; see also *State* v. *Walton*, supra, 227 Conn. 64.

Our Supreme Court has upheld an instruction that includes a nonmandatory presumption. *State* v. *Palmer*, supra, 206 Conn. 40. Although "[i]n *Sandstrom* v. *Montana*, supra, [442 U.S.] 517–24, the United States

Supreme Court held that a jury instruction that 'the law presumes that a person intends the ordinary consequences of his voluntary acts' violated the defendant's due process rights because a reasonable jury could have interpreted the instruction as a conclusive or burden-shifting presumption and thus relieved the state of its burden of proving every element of the crime. . . . *Sandstrom* does not invalidate, for example, the use of an 'entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant.' *Ulster County Court* v. *Allen*, 442 U.S. 140, 157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979) . . . ." (Citations omitted.) *State* v. *Amarillo*, 198 Conn. 285, 300–302, 503 A.2d 457 (1980); *State* v. *Palmer*, supra, 47.

The instruction in question did not require the jury to make a conclusive presumption as to the element of consent. The language to which the defendant points is offset by the preceding sentence of the charge, which states: "The essential nature of kidnapping requires that before you can convict you must find that the restraint and abduction were effected against the victim's will or at least without the victim's consent." The trial judge then gave the instruction with which the defendant takes issue, but only after giving the qualifying instruction, which removed the charge from the realm of *Sandstrom* error. Because there is no *Sandstrom* violation, the claim fails to satisfy the second prong of the *Golding* test.

## B

The defendant next asserts that the trial court should not have instructed the jury on the threat of the use of force in relation to the charge of sexual assault in a spousal relationship. The defendant argues that the

statutory alternative was not supported by the evidence, and, alternatively, that the charge sanctioned a nonunanimous verdict.

The defendant's claim fails to satisfy the second prong of the *Golding* analysis because the instruction in question does not rise to the level of a constitutional violation. "[T]he United State Supreme Court has held that a factual insufficiency regarding one statutory basis, which is accompanied by a general verdict of guilty that also covers another, factually supported basis, is not a federal due process violation. *Griffin* v. *United States*, 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991)." *State* v. *Chapman*, 229 Conn. 529, 539, 643 A.2d 1213 (1994). Thus, the defendant's claim that his federal constitutional rights were violated by the instruction at issue is not entitled to *Golding* review.

The defendant's claim that the same instruction violated his state constitutional right to a fair trial fails to satisfy the third prong of *Golding* because the defendant's constitutional right was not clearly violated. Our Supreme Court in *State* v. *Chapman*, supra, 229 Conn. 529, did not decide the issue of whether an instruction as to a statutory alternative unsupported by the evidence violates a state constitutional right. Even if we assume, arguendo, that this claim involves a state constitutional right, an examination of the record compels us to conclude that, in fact, the instruction in question is supported by the evidence. The defendant argues that the state presented no evidence that the victim faced a threat of the use of force. The defendant points out that on the two occasions when the assailant spoke, his words were not threatening. Even conceding this point, the jury reasonably could have found that the knife in the assailant's hand was a sufficient threat to support the statutory alternative concerning which the court instructed.

The defendant's assertion that the charge in question sanctioned a nonunanimous verdict is not a constitutional issue sufficient to pass the second prong of *Golding*. A similar claim has been rejected by our Supreme Court, even in the instance where a trial judge expressly sanctioned a nonunanimous verdict. *State* v. *Tucker*, 226 Conn. 618, 629 A.2d 1067 (1993). "The use of force and the threat of the use of force are quite simply two alternative methods of compulsion used by an actor to commit the one crime of sexual assault in the first degree. . . . To invalidate a jury instruction that mirrors the disjunctive language of the statute defies both logic and experience. . . . '[S]pecific unanimity instructions are not required if the alternative bases of liability are not "conceptually distinct." . . .' *State* v. *Bailey*, 209 Conn. 322, 334–35, 551 A.2d 1206 (1988)." (Citations omitted.) *State* v. *Tucker*, supra, 646–47. We conclude that the trial court's instruction on the threat of the use of force as a statutory alternative did not implicate the defendant's right to a fair trial.

## C

The defendant next asserts that the trial court's instruction on attempt violated the defendant's right not to be convicted except upon proof beyond a reasonable doubt. The defendant claims that the trial court incorrectly charged the jury on the state of mind necessary to support a conviction of attempted sexual assault in a spousal relationship.

The defendant argues that the court improperly instructed the jury that "[a] person is guilty of attempt to commit a crime if acting with the kind of mental state required for the commission of the crime he intentionally does or omits to do anything which under the circumstances as he believes them to be is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the

crime . . . . He must have acted with the same state of mind required for sexual assault in a spousal relationship." The defendant's claim appears to be that this instruction is improper because the trial court failed to use the phrase "specific intent" to describe the requisite intent for the attempted crime.

Although the defendant's claim is sufficiently constitutional in nature to satisfy *Golding*'s second prong; see *State* v. *Zaporta*, 36 Conn. App. 250, 264, 650 A.2d 582 (1994); *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994); the instruction fails to satisfy the third prong of *Golding* because the instruction did not clearly violate the defendant's right to a fair trial. The instruction in question complied with the statutory definition of the requisite intent and with the case law on the issue. General Statutes § 53a-49 (a) provides that "[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." "It is plain from a reading of General Statutes § 53a-49 (a) that the intent required for attempt liability is the intent required for the commission of the substantive crime." *State* v. *Almeda*, 189 Conn. 303, 307, 455 A.2d 1313 (1983). The trial court's instruction on the requisite intent for the substantive crime is not challenged on appeal and adequately informed the jury of the state of mind necessary to find the defendant guilty of the substantive offense; likewise, the instruction concerning the intent required for the attempt charge is adequate. We conclude that the

trial court's instruction on attempt did not clearly violate the defendant's constitutional right to be found guilty only upon proof beyond a reasonable doubt.

### D

Finally, the defendant argues that the trial court improperly instructed the jury on the presumption of innocence and reasonable doubt in violation of the defendant's due process right to a fair trial. The defendant specifically takes issue with the following parts of the trial court's instructions: (1) the "rules of law . . . are made to protect the innocent and not the guilty," (2) "a reasonable doubt . . . is a doubt held by a reasonable person," and (3) "if . . . the evidence . . . produces in your mind a settled and abiding belief that you would be willing to act upon in matters of the highest importance relating to your own affairs, then in that event you would be free from a reasonable doubt." We review these instructions seriatim.

The first instruction fails to satisfy the second prong of *Golding*. Language similar to that used here has been upheld by our Supreme Court. *State* v. *Francis*, 228 Conn. 118, 635 A.2d 762 (1993). The phrase "the law is made to protect society and innocent persons, and not to protect guilty ones" gives rise to "no constitutional error in connection with this instruction." Id., 136; see also *State* v. *Walton*, supra, 227 Conn. 67; *State* v. *Tucker*, supra, 226 Conn. 651–52. We conclude that the instruction in question does not rise to the level of a constitutional violation and, therefore, fails to satisfy *Golding's* second prong.

Likewise, the claim regarding the second instruction does not rise to the level of a constitutional violation. "The challenged instructions are similar or identical to jury instructions that have previously been approved by our Supreme Court. *State* v. *DePastino*, 228 Conn. 552, 572, 638 A.2d 578 (1994) ('a doubt for which a valid reason can be assigned'); *State* v. *Gomez*, 225 Conn. 347, 353, 622 A.2d 1014 (1993) ('a doubt for

which a reasonable man or woman can give a valid reason'); *State* v. *Adams*, 225 Conn. 270, 290, 623 A.2d 42 (1993) ('a doubt for which a valid reason can be assigned'); *State* v. *Derrico*, 181 Conn. 151, 171, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980) ('one for which you can, in your own mind, conscientiously give a reason'); *State* v. *Johnson*, 29 Conn. App. 584, 590, 617 A.2d 174 (1992) ('a doubt for which a valid reason may be assigned'), appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1993) (certification improvidently granted).'' *State* v. *Goodman*, 35 Conn. App. 438, 441–42, 646 A.2d 849 (1994). The challenged instruction, therefore, does not satisfy the second prong of *Golding*.

Finally, the third instruction that the defendant asserts is improper is almost identical to language contained in his request to charge[6] and, therefore, is induced error, which we decline to review. *State* v. *Walton*, supra, 227 Conn. 67; *State* v. *Hinckley*, 198 Conn. 77, 81 n.2, 502 A.2d 388 (1985).

The "willing to act" language does not appear in the defendant's request to charge but fails to satisfy the second prong of *Golding*. Although expressing disapproval of this instruction, our Supreme Court has upheld this language because it does not rise to the level of constitutional error. *State* v. *Johnson*, 214 Conn. 161, 179, 571 A.2d 79 (1990); *State* v. *Smith*, 210 Conn. 132, 150, 554 A.2d 713 (1989). Accordingly, we decline to review this instruction as it does not implicate the defendant's constitutional rights.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] The defendant requested the following instruction: "Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs." The defendant's brief does not clearly state how this language differs from the trial court's instruction in such a way as to violate a constitutional right of the defendant.