STATE OF CONNECTICUT *v.* CLINT PICKERING
(13975)

SCHALLER, SPEAR and HENNESSY, Js.

Argued May 22—decision released July 25, 1995

*M. Donald Cardwell,* for the appellant (defendant).

*Michele C. Lukban,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Joseph Valdes,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of attempt to distribute narcotics by a person who is not drug-dependent in violation of General Statutes §§ 53a-49 (a) (2)[1] and

---

[1] General Statutes § 53a-49 provides in pertinent part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental

21a-278 (b),[2] conspiracy to commit the sale of narcotics by a person who is not drug-dependent in violation of General Statutes §§ 53a-48[3] and 21a-278 (b), and possession of a narcotic substance in violation of General Statutes § 21a-279 (a).[4] The defendant claims that the trial court improperly (1) allowed the state to file an amended substitute information after jury selection and (2) admitted into evidence a gun possessed by a charged coconspirator. We affirm the judgment of the trial court.

The following facts are relevant to our disposition of this appeal. On March 11, 1993, an informant, Eric Rivera, placed a telephone call to a beeper number to arrange for the delivery of four ounces of cocaine. Rivera placed this call under the supervision of Sergeant Eric Smith of the Connecticut state police from the parking lot of the McDonald's restaurant on Weston Street in Hartford.

An unidentified man then telephoned Rivera and arranged to meet him in the McDonald's parking lot. Shortly thereafter, the defendant, the defendant's

state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 21a-278 provides in pertinent part: "(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance . . . except as authorized in this chapter, and who is not at the time of such action a drug-dependent person . . . shall be imprisoned . . . ."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[4] General Statutes § 21a-279 provides in pertinent part: "(a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter . . . may be imprisoned . . . ."

brother Clement Pickering and a third person arrived at the parking lot in a white Pontiac. The defendant spoke with Rivera, arranged to return in a few minutes with four ounces of cocaine and then left with his brother and the third person.

Approximately fifteen or twenty minutes later, the white car returned to the parking lot followed by a blue Ford Mustang. There were two people in each car. The defendant was in the white car and his brother was driving the blue car. The two cars stopped in the parking lot, and the occupants conversed. The cars then parked near each other. The defendant's brother parked the blue car in a position from which he could observe the white car and its occupants.

When police officers approached the parked cars, the defendant attempted to flee. As the defendant ran, he threw away four ounces of cocaine and $1259, which the police later recovered. The police also seized a beeper from the defendant's person. The defendant's brother remained in the blue car and hid a loaded gun under the front passenger seat. Police seized the gun, $737, a $101 bank check, a cellular telephone, and drugs from the blue car. Police also seized a beeper from the defendant's brother.

On June 9, 1994, the state filed a substitute information charging in the second count that an unknown male conspirator "returned a phone call to Trooper Smith, agreeing to deliver a quantity of cocaine at McDonald's restaurant." The second count further alleged that the defendant, the defendant's brother, and Antoinette Little entered the McDonald's parking lot shortly thereafter and spoke to Smith. Finally, the second count alleged that the defendant and Little "approached Trooper Smith" when they returned to the parking lot.

The trial court put the defendant to plea on this substitute information. The defendant entered pleas of not guilty and elected a jury trial. Jury selection began on June 9 and concluded on June 15, 1994.

On June 21, 1994, the state filed an amended substitute information against the defendant. The second count of the amended substitute information replaced the name of Trooper Smith with the name of Eric Rivera as the individual whom the defendant called on the telephone and spoke to in the parking lot. The second count of the amended substitute information also changed the description of the defendant's activities from "approached Trooper Smith" to "attempted to deliver the cocaine."

After overruling the defendant's objection to the state's amended substitute information, the trial court asked the defendant if he needed a continuance. The defendant stated that he did not need a continuance. On June 21, 1994, the presentation of evidence began.

I

The defendant claims that the trial court improperly allowed the state to file an amended substitute information after the jury had been selected, in contravention of Practice Book § 624. That section provides in pertinent part: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting attorney to amend the information or indictment at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. . . ."

Practice Book § 624 requires that the state show: "(1) good cause for the amendment; (2) that no additional or different offense is charged; and (3) that no substantive right of the defendant will be prejudiced." *State*

v. *Tanzella*, 226 Conn. 601, 614, 628 A.2d 973 (1993). The defendant's sole contention is that the allowance of the amended substitute information prejudiced his substantive right.[5]

We first consider the state's argument that the defendant failed to raise the claim at trial with sufficient clarity to alert the trial court to the claim now raised on appeal. "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial . . . ." Practice Book § 4185. We must examine the record to discern whether the defendant raised the issue in question at trial. *State* v. *Zollo*, 36 Conn. App. 718, 726, 654 A.2d 359 (1995).

In this case, the defendant objected to the admission of the amended substitute information on the ground that the admission infringed on his substantive right to notice of the offenses charged. Moreover, counsel argued that he relied on the facts of the original substitute information when he conducted voir dire of the jury. Counsel specifically pointed out to the trial court that he had used the voir dire to examine the prospective jurors with regard to racial bias and prejudice. We conclude that the record indicates that counsel preserved the defendant's claim that his substantive right to conduct an effective voir dire was prejudiced.

We turn, therefore, to the merits of the defendant's claim. "Practice Book § 624 is primarily designed as a notice provision. Its purpose is to ensure that the defendant has adequate notice of the charges against which he must defend." *State* v. *Tanzella*, supra, 226 Conn. 608, citing *State* v. *Jacobowitz*, 182 Conn. 585, 590, 438 A.2d 792 (1981). "The voir dire process is ' "an

---

[5] The defendant also argued in his brief that the state lacked good cause for the amendment, but withdrew this issue at oral argument. The state had claimed that it learned of the informant Rivera's participation on the eve of trial and after jury selection.

integral part" of the criminal trial . . . .' " *State* v. *Cole,* 8 Conn. App. 545, 551, 513 A.2d 752 (1986), quoting *State* v. *Gethers,* 197 Conn. 369, 375–76, 497 A.2d 408 (1985). For the purposes of Practice Book § 624, "a criminal trial begins with the voir dire of the prospective jurors." *State* v. *Cole,* supra, 551–52. The defendant, therefore, "needs to know the nature of the accusations against him in order to question jurors effectively." *State* v. *Tanzella,* supra, 608, citing *State* v. *Cole,* supra, 551.

In this case, the defendant claims that the amended substitute information prejudiced his substantive right to conduct an effective voir dire. In support of his claim, the defendant argues that he relied on the detailed factual allegations made by the state in the original substitute information when he conducted the voir dire. The defendant concludes, therefore, that the original substitute information did not provide adequate notice of the offenses charged because of the factual differences in the amended substitute information. We do not agree. The trial court acted properly within its discretion in permitting the amendment.

Our Supreme Court has held that Practice Book § 624 does not prohibit the state from amending the factual allegations of a charge even after closing arguments. *State* v. *Anderson,* 211 Conn. 18, 32, 557 A.2d 917 (1989). In *Anderson,* the Supreme Court upheld the trial court's ruling that the state could amend its bill of particulars to allege attempted anal intercourse rather than attempted oral intercourse.[6] Id., 30, 32. Likewise, this court has permitted the state to amend a bill of particulars so as to delete the word "kick" from the allegation of the specific ways in which the defendant

---

[6] In *Anderson,* the Supreme Court specifically ruled on the amendment of a bill of particulars. The court noted, however, that Practice Book § 624 applied equally to informations and bills of particulars. *State* v. *Anderson,* supra, 211 Conn. 29–30 n.13.

committed the crime charged. *State* v. *Cunningham*, 3 Conn. App. 353, 358, 488 A.2d 834 (1985).

In this case, the amended substitute information alleged that an informant, Rivera, rather than a state trooper, Smith, telephoned a beeper number and met with the defendant in a McDonald's parking lot. The amended substitute information also changed the description of the defendant's activities from "approached Trooper Smith" to "attempted to deliver cocaine." These factual amendments are not distinguishable from those in *State* v. *Anderson*, supra, 211 Conn. 32, and *State* v. *Cunningham*, supra, 3 Conn. App. 358.

The defendant relies on this court's ruling in *State* v. *DesLaurier*, 32 Conn. App. 553, 630 A.2d 119 (1993), aff'd, 230 Conn. 572, 646 A.2d 108 (1994), for support. In *DesLaurier*, we held that a defendant's substantive right to an effective voir dire is prejudiced if the state is permitted to add drug charges after voir dire has begun. Id., 558. We stated: "Obviously, defense counsel would not have examined the prospective jurors to uncover possible bias or prejudice concerning drug crimes and the entire voir dire would be severely impaired if not completely emasculated." Id.

*DesLaurier* stands for the proposition that no new or additional charges may be brought against the defendant after commencement of the trial. See *State* v. *Cole*, supra, 8 Conn. App. 550–52. *DesLaurier* does not, however, create a right to examine prospective jurors for possible bias or prejudice concerning each aspect of the factual scenario alleged in the information. " ' "A party has no right to assume the facts of a case about to go on trial, and ascertain a juror's opinion in advance." ' " *State* v. *Anthony*, 172 Conn. 172, 176, 374 A.2d 156 (1976); *State* v. *Clark*, 164 Conn. 224, 226, 319 A.2d 398 (1973); F. Busch, Law and Tactics

in Jury Trials (1959) § 82. We conclude that the defendant had adequate notice of the offenses charged and the amended substitute information did not cause the defendant's substantive rights to be prejudiced.

## II

The defendant next claims that the trial court improperly admitted into evidence a gun possessed by a charged coconspirator. The defendant claims that, because no evidence connected the seized gun to the defendant, the gun is not relevant. The defendant further contends that, even if the gun is relevant, the prejudice caused by its admission outweighs its probative value. We disagree with the defendant's claim.

The determination of relevance is left to the broad discretion of the trial court. *State* v. *Sauris*, 227 Conn. 389, 407, 631 A.2d 238 (1993); *State* v. *Greene*, 209 Conn. 458, 478, 551 A.2d 1231 (1988). Evidence can be found relevant if it may reasonably be construed "to establish a fact in issue or to corroborate other direct evidence in the case." (Internal quotation marks omitted.) *State* v. *Greene*, supra, 477. We will defer to the trial court's finding unless there has been a clear abuse of discretion. *State* v. *Sauris*, supra, 407. Our Supreme Court has held that a gun may be relevant to the issue of intent to sell narcotics. *State* v. *Delossantos*, 211 Conn. 258, 280–81, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989); *State* v. *Avila*, 166 Conn. 569, 580, 353 A.2d 777 (1974).

In this case, the state presented evidence that the defendant and his brother initially arrived at the McDonald's parking lot in a white Pontiac. The defendant spoke with Rivera, arranged to return in a few minutes with four ounces of cocaine, and then left with his brother. Approximately fifteen or twenty minutes later, the defendant returned to the parking lot in the white

car followed by a blue Ford Mustang driven by his brother. In the parking lot, the two cars stopped and the occupants conversed. The cars then parked in a position from which the defendant's brother could observe the white car and its occupants. When officers approached the parked cars, the defendant attempted to flee. The defendant's brother remained in the blue car and hid a loaded gun under the front passenger seat. Police seized the gun from the blue car. From these facts the trial court could have determined that the gun seized from the blue car was relevant to the charges against the defendant.

This case can be distinguished from our recent decision in *State* v. *Mozell*, 36 Conn. App. 672, 652 A.2d 1060 (1995), where we found that "the defendant was never alleged or shown to be in possession of the gun. Nor was the gun alleged or shown to be involved in any of the activities observed by the surveillance team." Id., 677. We concluded, therefore, that the trial court abused its discretion in admitting the gun into evidence. Id. Where, as in this case, the gun is shown to be involved in the offense charged by reason of being in the possession of a charged coconspirator, the trial court will not be found to have abused its discretion in admitting the gun into evidence. *State* v. *Lee*, 30 Conn. App. 470, 489, 620 A.2d 1303 (1993) (presence of firearms at defendant's residence factor tending to show that defendant kept firearms in connection with attempted distribution of marijuana).

Finally, the defendant claims that, even if the gun is relevant, the prejudice caused by its admission outweighs its probative value. Specifically, the defendant claims that the gun's admission unduly aroused the jury's interest and created a side issue that distracted the jury.[7] Resolution of these determinations is left to

---

[7] In *State* v. *DeMatteo*, 186 Conn. 696, 702–703, 443 A.2d 915 (1982), our Supreme Court outlined the following four situations where prejudice to

the sound discretion of the trial court judge. *State* v. *Tucker*, 181 Conn. 406, 416, 435 A.2d 986 (1980). The defendant has failed to demonstrate how the admission of the gun unduly aroused the jurors' hostility or sympathy. The state had already introduced testimony that a gun had been found in the blue car. The admission of the gun itself, therefore, merely amounted to cumulative evidence. Moreover, the admission of the gun did not create a side issue because it corroborated testimony that a gun was found. See *State* v. *Greene*, supra, 209 Conn. 479. The balancing of the prejudicial effect of this evidence fell within the bounds of the trial court's discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

the defendant could outweigh the probative value of evidence: "(1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." The defendant in this case appears to be claiming that the first two of these situations occurred in this case.